EFiled:  Oct 17 2022 03:57PM EDT
Transaction ID 68264385
Case No. S22C-10-012 CAK

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| JOHN PAUL MAC ISAAC | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. |
| | ) |
| CABLE NEWS NETWORK, INC., | ) |
| ADAM BENNETT SCHIFF, | ) |
| POLITICO LLC. AND | ) |
| ROBERT HUNTER BIDEN | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW, PLAINTIFF John Paul Mac Isaac (hereinafter, "Plaintiff"), by and through undersigned counsel hereby sues Defendants and alleges as follows:

### A. PARTIES, JURISDICTION & VENUE

1.    This is an action for defamation, defamation per se, aiding and abetting defamation, and civil conspiracy to commit defamation and requests damages in excess of seventy-five thousand and 00/100 dollars ($75,000.00).

2.    Plaintiff John Paul Mac Isaac ("Plaintiff") is an individual over the age of 18 who is *sui juris* and resides in Wilmington, Delaware.

3.    Defendant Cable News Network, Inc. ("CNN") is a Delaware corporation that provides televised and internet-based news and commentary to

cable television subscribers and the general public. Its registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801

4.     Defendant Adam Bennett Schiff ("SCHIFF"), being sued in his individual capacity, is an individual over the age of 18 who is *sui juris* and resides California and Maryland. SCHIFF is the United States Representative for the 28th District of California and was, at the time of the actions giving rise to this Complaint, the Chairman of the House of Representatives Permanent Select Committee on Intelligence. Schiff can be served at ███████████████

███████████████

5.     Defendant Politico LLC ("POLITICO") is a Delaware limited liability company that purportedly provides news and information services at the intersection of politics and policy to the general public.

6.     Defendant BFPCC, Inc. ("BFPCC") is a Delaware corporation that was used for the 2020 Presidential campaign of President Joseph R. Biden.

7.     Defendant Robert Hunter Biden ("HUNTER") is currently a California resident who transacts significant business in State of Delaware and has significant ties to the State of Delaware.

8.     Personal jurisdiction over Defendants is proper pursuant Del. Const. Art. IV, § 7.

9.     Specific personal jurisdiction over SCHIFF is proper pursuant to 10 Del. C. §3104(c)(3).

10.    Venue is appropriate in this Court as Plaintiff resides in New Castle County.

## B. FACTS APPLICABLE TO ALL COUNTS

11.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 – 11.

12.    Plaintiff is a private citizen who currently resides in Wilmington, Delaware.

13.    Plaintiff owned a small business named The Mac Shop, Inc. (the "Mac Shop") which was a Delaware corporation.

14.    Plaintiff was in the business of repairing Mac computers.

15.    Plaintiff derived all of his income from the Mac Shop.

16.    Plaintiff was a trusted and respected part of the community in Wilmington, Delaware.

17.    Plaintiff had a loyal customer-base who would refer others to his shop to fix their Macs.

18.    On or about April 12, 2019, HUNTER was referred to Plaintiff's shop to fix some damaged Macs.

19.     On April 12, 2019, HUNTER asked to recover information from the damaged Mac computers. Copy of Repair Authorization attached as **EXHIBIT A**.

20.     On or about April 13, 2019, at Plaintiff's request, HUNTER returned to the Mac Shop with a Western Digital external hard drive onto which Plaintiff could transfer the recovered data.

21.     Later that same day, on or about April 13, 2019, Plaintiff completed the recovery and called HUNTER to notify him of such and to request that he retrieve his recovered data.

22.     On or about April 17, 2019, Plaintiff sent an electronic invoice to HUNTER in the amount of $85.00.

| Date | Customer | ID | Title | Status | Amount | |
|---|---|---|---|---|---|---|
| 04/17/20... | Hunter Biden | 6077<br>Not viewed | The Mac Shop Inv... | Overdue<br>By 582... | $85.00 | ... |

23.     Plaintiff reached out to HUNTER at least one more time thereafter to request that he pay his invoice and retrieve his recovered data.

24.     HUNTER never returned to the Mac Shop to retrieve his recovered data nor did he pay his invoice.

25.     Pursuant to the terms of the Repair Authorization signed by HUNTER, "[e]quipment left with the Mac Shop after 90 days of notification of

completed service will be treated as abandoned and you agree to hold the Mac Shop harmless for any damage or loss of property."

26.     Starting in late July 2019 to October 14, 2020, Plaintiff had multiple interactions with the Federal Bureau of Investigation (the "FBI"), U.S. Congressional staff members, and Mr. Robert Costello, Esquire ("COSTELLO"), attorney for Rudolph Giuliani, Esquire ("GIULIANI").

27.     On or about December 9, 2019, the FBI served a federal grand jury subpoena on Plaintiff requiring he turn over the laptop and hard drive, which Plaintiff did on that day. Copy of subpoena attached as **EXHIBIT B**.

28.     In August 2020, Plaintiff connected with COSTELLO to whom he provided a copy of the recovered data and the Repair Authorization.

29.     Plaintiff specifically asked COSTELLO to not identify him to GIULIANI or anyone else when discussing the recovered data as Plaintiff desired to remain anonymous.

30.     After providing a copy of the recovered data to COSTELLO but prior to October 14, 2020, upon information and belief, GIULIANI provided information from the recovered data to the New York Post newspaper ("NY POST").

31.     On October 13, 2020, Plaintiff received a call from Mr. George

Mesires,[1] identifying himself as HUNTER's attorney, asking if Plaintiff still had

possession of his client's laptop and following up thereafter with an email to the

Plaintiff. Copy of email attached as **EXHIBIT C**.

32.     On October 14, 2020, at approximately 5:00 AM, the NY POST

published an exposé about the contents of HUNTER's recovered data.

33.     Shortly thereafter, the NY POST "updated" the online version of the

exposé.

34.     As a direct result of the NY POST exposé, public emotions were

heightened and many in the general public, the media, and the government began

to either defend or attempt to refute the exposé. The NY POST exposé fueled a rise

in anger and hatred between the different political movements.

35.     As a result of the publication of the exposé, the Plaintiff quickly

became the target of accusations by those who sought to cast doubt on the

information contained in the laptop and the laptop itself.

36.     Plaintiff was not involved in the disclosure of the recovered data to

the NY POST, did not promote the disclosure in any way, nor did the Plaintiff

authorize the disclosure.

---

[1] George Mesires is a partner in the Chicago office of Faegre Drinker Biddle & Reath LLP.

37.    While Plaintiff verified how he came into possession of the recovered data to the NY POST, Plaintiff was unaware of the details of the NY POST exposé, when the NY POST exposé was going to be published, and Plaintiff explicitly told the NY POST that he did not want to be identified.

38.    Plaintiff did not authorize the disclosure of his identity by GIULIANI, COSTELLO, or the NY POST, did not authorize the disclosure of the information, nor was he involved in any determinations or strategy regarding the disclosure of the information.

39.    Plaintiff was not explicitly identified in the NY POST exposé but was, instead, referred to as the Delaware computer repair shop "store's owner."

40.    NY POST, as part of its original publication of the exposé and without the consent of Plaintiff, published a photo of the Repair Authorization without blurring the business name thereby notifying the public and the media where HUNTER had dropped off his laptop for repair.

41.    Also on October 14, 2020, *subsequent* to the NY POST's disclosure of the Plaintiff's identity, other media outlets, including writers from the Daily Beast purportedly investigating the NY POST exposé, interviewed and wrote an article about the Plaintiff portraying him as bizarre

(https://www.thedailybeast.com/man-who-reportedly-gave-hunters-laptop-to-rudy-speaks-out-in-bizarre-interview).[2]

42.    In an attempt to clarify the inaccuracies about the Plaintiff published in the article by the Daily Beast, Plaintiff's counsel wrote a statement and approached media outlets with that statement. The Wall Street Journal did not return communications from Plaintiff's counsel and the Washington Post responded that they do not think the statement "would be a good fit" for the news organization. Copy of clarifying statement by Plaintiff's counsel attached as **EXHIBIT D** and email from Washington Post attached as **EXHIBIT E**.

43.    On or about October 19, 2020, a "Public Statement on the Hunter Biden Emails," signed by more than 50 former intelligence officials was released stating that the information contained in the NY POST expose has "all the classic earmarks of a Russian information operation," but that they "do not know if the emails…are genuine or not and that [they] do not have evidence of Russian involvement…" Public Statement attached as **EXHIBIT F**.

44.    Upon information and belief, the Public Statement was issued to influence American voters to vote for then-candidate, now President, Joseph R.

---

[2] The DAILY BEAST article was the result of Plaintiff being accosted by a group of journalists asking him questions about his involvement in the NY POST exposé. Plaintiff, concerned about his and his family's wellbeing, attempted to respond in ways that would protect them but, not having ever been the subject of media inquiry, his responses come across as confused and contradictory. In fact, his seemingly confused and contradictory statements were made because of his inexperience with the media and his lifelong status as a private figure.

Biden and offered no actual evidence of the claims that Russia was involved in the release of the information from Hunter Biden's laptop.

45.     On October 19, 2020, Director of National Intelligence Ratcliffe, stated:

> "Let me be clear, the intelligence community doesn't believe [that the Hunter Biden laptop situation is part of a Russian disinformation campaign] because there is no intelligence that supports that [assertion] and *we have shared no intelligence with Chairman Schiff or any other member of Congress that Hunter Biden's laptop is part of some Russian disinformation campaign*. It's simply not true…" *Emphasis* added.

46.     In a letter dated, October 20, 2020, Ms. Jill C. Tyson, Assistant Director of the FBI's Office of Congressional Affairs reported to Congress that the FBI has, "nothing to add at this time to the October 19th public statement by the Director of National Intelligence about the available actionable intelligence." Copy of letter attached as **<u>EXHIBIT G</u>**.

47.     Plaintiff is not a Russian agent nor is he a participant in a Russian disinformation campaign.

48.     On or about October 30, 2020, Plaintiff's clarifying statement was published by justthenews.com for all to read.[3]

49.     On October 21, 2021, POLITICO published a story confirming the validity of the NY POST exposé. *See*

---

[3] https://justthenews.com/accountability/russia-and-ukraine-scandals/lawyer-delaware-shop-owner-fbi-initially-turned-down#article

https://www.politico.com/news/magazine/2021/10/12/hunter-biden-corruption-515583.

50.     On March 16, 2022, the NY Times published an article further verifying the validity of the NY POST exposé stating:

> People familiar with the investigation said prosecutors had examined emails between Mr. Biden, Mr. Archer and others about Burisma and other foreign business activity. Those emails were obtained by The New York Times from a cache of files that appears to have come from a laptop abandoned by Mr. Biden in a Delaware repair shop. The email and others in the cache were authenticated by people familiar with them and with the investigation.

*See* https://www.nytimes.com/2022/03/16/us/politics/hunter-biden-tax-bill-investigation.html.

51.     On March 30, 2022, the Washington Post confirmed the validity of the NY POST exposé. *See*

https://www.washingtonpost.com/technology/2022/03/30/hunter-biden-laptop-data-examined/.

### C. COUNT I: DEFAMATION AND DEFAMATION PER SE ADAM BENNETT SCHIFF, INDIVIDUALLY

52.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 – 52.

53.     SCHIFF, individually, was actively involved in fundraising for the 2020 Presidential campaign of Joseph R. Biden, Jr. Articles outlining Defendant's fundraising efforts attached as **EXHIBIT H**.

54.     The laptop held information that could have hurt the political campaign of then-Presidential candidate, now President, Joseph R. Biden Jr, for whom SCHIFF spent significant time campaigning.

55.     According to a poll conducted by the Media Research Center, nearly 9.4% of Biden voters would not have voted for him had they known about the full extent of the scandal.[4]

Even more Biden voters (45.1%) said they were unaware of the financial scandal enveloping Biden and his son, Hunter (a story infamously censored by **Twitter** and **Facebook**, as well as **ignored by the liberal media**). According to our poll, full awareness of the Hunter Biden scandal would have led 9.4% of Biden voters to abandon the Democratic candidate, flipping all six of the swing states he won to Trump, giving the President 311 electoral votes.

56.     Upon information and belief, SCHIFF knowingly fomented further anger and hatred against the Plaintiff and others in his defense of Presidential-candidate, Joseph R. Biden, Jr., and his attempt to "kill" the story.

57.     On or about Friday, October 16, 2020, at 6:40 pm EST, SCHIFF was interviewed by broadcaster, Wolf Blitzer ("BLITZER"), on CNN as part of CNN's show, the *Situation Room with Wolf Blitzer* (the "Interview"). The *Situation Room with Wolf Blitzer* attracts a very large world-wide audience. Transcript attached as **EXHIBIT I**.

---

[4] https://www.newsbusters.org/blogs/nb/rich-noyes/2020/11/24/special-report-stealing-presidency-2020

58.    The Interview was conducted live "via Cisco Webex" with BLITZER in New York and SCHIFF at home.



59.    BLITZER's first question to SCHIFF was:

"Does it surprise you at all that this information that Rudy Giuliani is peddling very well could be connected to some sort of Russian Government disinformation campaign?"

60.    SCHIFF's response to BLITZER's question was:

"***Well we know that this whole smear on Joe Biden comes from the Kremlin***. That's been clear for well over a year now that they've been pushing this false narrative about the Vice President and his son. And, you know, the idea that the President, that the White House Counsel, and others were made aware that Giuliani was being used by ***Russian intelligence*** and using ***Russian intelligence*** in the sense of meeting with ***an agent of the Kremlin*** and pushing out this ***Kremlin false narrative***…" ***Emphasis*** added.

61.   SCHIFF continued with:

"***But clearly, the origins of this whole smear are from the Kremlin***…" ***Emphasis*** added.

62.   Later in the interview, BLITZER, in what seems to be an attempt to bolster the SCHIFF's credentials and the veracity of the SCHIFF's statements, said:

"Have you, as a member of the Gang of Eight, the top leadership in Congress, the Senate, and the House, and members of the Intelligence Committee, have you been formally briefed on what the Russians are up to right now in trying to peddle this kind of information?"

63.   SCHIFF responded as follows:

"Well, I was in the Intelligence Committee today to see what the latest was, and frankly, ***we haven't gotten much from the intelligence community very recently***, which concerns me. They have at times, some of the leadership, like Director [of National Intelligence] Ratcliffe, not been very forthcoming in terms of the intelligence on the Russian threat and been promoting this false equivalence with other countries.

So, you know, I wish I could tell you more, Wolf. I wish the intelligence community was able to tell the public more.

***But we do know this: the Russians are once again actively involved in trying to denigrate the Vice President***…" ***Emphasis*** added.

64.   Director of National Intelligence Ratcliffe's repudiation of that claim on October 19, 2020 was during an interview on *Fox News Mornings with Maria*.

65.     According to the Director of National Intelligence, SCHIFF did not have any evidence and did not receive any report stating that the information contained in the NY POST exposé was part of a Russian disinformation campaign.

66.     SCHIFF confirmed this in his interview with BLITZER.

67.     The information contained in the NY POST exposé came from HUNTER who voluntarily left his laptop with the Plaintiff and failed to return to retrieve it.

68.     This is not the first time SCHIFF has knowingly made false statements about Russia's involvement in United States politics. *See* Wall Street Journal editorial opinion attached as **EXHIBIT J**.

69.     SCHIFF <u>had not</u> received reports that the Hunter Biden laptop information was part of a Russian disinformation campaign, therefore, SCHIFF knowingly and intentionally made the false statements that the information contained in the NY POST exposé, originally obtained from the Plaintiff, was part of a Russian plot to influence the U.S. Presidential election.

70.     SCHIFF's statements were not made during a Congressional debate or committee proceeding.

71.     SCHIFF was not carrying out any of his enumerated legislative powers at the time of his interview.

72.     SCHIFF was not carrying out any of his implied powers as a member of Congress.

73.     SCHIFF's job description as a member of Congress does not include knowingly conveying false information to the public.

74.     Upon information and belief, SCHIFF's false statements were made from his home *after* normal working hours.

75.     SCHIFF had significant involvement in the Presidential campaign of Joseph R. Biden, Jr which included hosting fundraisers for the candidate and speaking on the candidate's behalf.

76.     SCHIFF's false statements were, in fact, campaign speech and not speech associated with his Congressional duties which, of course, do not include lying to the American public about the Plaintiff.

77.     Plaintiff, a target of SCHIFF's defamatory campaign speech, was not a participant in any political campaign.

78.     SCHIFF knowingly conveyed false information with the intent to harm the reputation of Plaintiff.

79.     SCHIFF knowingly conveyed false information with the intent to promote the election of Joseph R. Biden, the Presidential candidate most vulnerable because of the NY POST exposé.

80.     Upon information and belief, SCHIFF knowingly conveyed false information to the public with the intent to manipulate the public in the United States to elect Joseph R. Biden, Jr. as the next President.

81.     Plaintiff was the individual who obtained the information from HUNTER that was eventually published by the NY POST, his identity had been revealed by the NY POST prior to SCHIFF's interview, and Plaintiff's name was, at that time, and remains synonymous with Hunter Biden's laptop.

82.     SCHIFF's actions and campaign statements had the specific intent to communicate to the world that the information presented in the NY POST exposé was part of a Russian disinformation campaign.

83.     SCHIFF's actions and campaign statements had the specific intent to communicate to the world that the Plaintiff is a Russian agent and/or a participant in a Russian disinformation campaign.

84.     The tortious injury to Plaintiff in Delaware by SCHIFF's false and defamatory statements could reasonably have been foreseen.

85.     SCHIFF, through his conduct of knowingly conveying false campaign statements to a world-wide audience, was encouraging listeners to take action against those who released this information, which specifically included the Plaintiff.

86.    Plaintiff, as a direct result of SCHIFF's campaign statements, has lost his good reputation in the community, is now widely considered either a Russian agent or a participant in a Russian disinformation campaign as shown by the attached Yelp Reviews and personal emails/threats received. Yelp reviews attached as **EXHIBIT K** and personal threats attached as **EXHIBIT L**.

87.    Further evidence of the harm suffered by Plaintiff as a direct result of SCHIFF's false campaign statements is that the Plaintiff lost his loyal client-base and, as a result, had to close his business.

88.    SCHIFF made the false and defamatory campaign statements to the *Situation Room's* worldwide audience without privilege to do so.

89.    SCHIFF's false and defamatory campaign statements impute that Plaintiff has committed an infamous crime, i.e., treason and/or other crimes against the United States of America by participating in a Russian attempt to undermine American democracy and the 2020 Presidential election.

90.    As a direct and proximate result of the false and defamatory campaign statements made by SCHIFF, Plaintiff has suffered, and continues to suffer, substantial damages, including having to close his business.

91.    SCHIFF's false and defamatory campaign statements are of the kind that would tend to, and in fact did, prejudice the Plaintiff in the eyes of a substantial and respectable portion of the community at large.

92.     SCHIFF acted with actual malice toward the Plaintiff in that he acted with knowledge that his statements were false.

93.     Alternatively, SCHIFF acted with actual malice toward the Plaintiff in that he acted with reckless disregard to the harm his knowingly defamatory false campaign statements would have on the Plaintiff, both personally and as a small business owner.

94.     SCHIFF's false and defamatory campaign statements have subjected and continue to subject the Plaintiff to distrust, scorn, ridicule, hatred, and contempt. As such, the defamatory statements constitute defamation *per se.*

95.     Alternatively, SCHIFF knew or should have known the significant impact his defamatory false campaign statements would have on the Plaintiff who was the source of the information.

96.     SCHIFF knew or should have known that his false and defamatory statements would be broadcast to an audience in Delaware.

97.     SCHIFF knew or should have known that his false and defamatory statements would be viewed via the Internet by Delaware residents.

98.     At the very least, SCHIFF was grossly negligent in making his defamatory false statements about the Plaintiff.

### ***Prayer for Relief***

WHEREFORE, the Plaintiff JOHN PAUL MAC ISAAC prays for judgment against the Defendant ADAM BENNETT SCHIFF as follows:

(a)    Awarding Plaintiff compensatory damages of $1,500,000.00 to replace Plaintiff's lost income resulting from SCHIFF's false and defamatory statements;

(b)    Awarding Plaintiff punitive damages as a result of SCHIFF's wrongdoing in an amount to be determined at trial;

(c)    Awarding Plaintiff pre- and post-judgment interest;

(d)    Awarding Plaintiff all attorneys' fees and costs associated with litigating this case;

(e)    Requiring SCHIFF to make a public apology to Plaintiff; and

(f)    Such further relief as this Court deems just and proper.

## D. COUNT 2: DEFAMATION AND DEFAMATION PER SE CNN

99.    Plaintiff incorporates by reference all allegations contained in Paragraphs 1 – 99.

100.    Upon information and belief, CNN supported the candidacy of Joseph R. Biden, Jr. for president in the 2020 presidential elections or, alternatively, opposed the candidacy of Donald J. Trump.

101.   On or about October 16, 2020, at 6:40 pm EST, CNN televised the Interview between SCHIFF and BLITZER.

102.   During the Interview, SCHIFF made false and defamatory campaign statements indicating that he had confirmed that the source of the information from the laptop was Russia.

103.   Plaintiff was the known source of the information from the laptop, not Russia.

104.   CNN knew Plaintiff was the source of the information as it had published an article referencing an interview with Plaintiff on October 14, 2020.[5] In that article, it said:

> That shop employee has been identified as John Paul Mac Isaac. He spoke to CNN on Thursday in Wilmington. Mac Isaac said that in April 2019 someone claiming to be Hunter Biden brought in a damaged laptop computer to retrieve the data on it. This required him to manually transfer the computer's data to a separate hard drive, Mac Isaac said, which is how he came to see what some of the files contained.

105.   Despite the fact that CNN knew Plaintiff was the source of the information, it broadcast the Interview of SCHIFF during which Plaintiff was defamed.

106.   CNN also falsely reported that, based on the October 20, 2020 letter to Congress from Ms. Jill C. Tyson, there was a "suggestion" that the review was continuing.[6]

107.   There was no such suggestion in the letter to Congress.

---

[5] https://lite.cnn.com/en/article/h_7e5fcdffc7051ba1d73b135ee16f5b3b
[6] https://www.cnn.com/2020/10/21/politics/fbi-russia-disinformation/index.html

108.   CNN's false report that the letter from Ms. Jill C. Tyson suggested that the review was continuing created a strong implication that U.S. intelligence officials actually believed Russia was involved in the release of information from Hunter Biden's laptop.

109.   CNN boasts a viewership of over 700,000 viewers each week.[7]

*Week of March 28, 2022 cable news ratings, Monday-Sunday (Nielsen live-same-day data):*

| PRIME | Fox News | MSNBC | CNN |
|---|---|---|---|
| • Total Viewers: | **2,529,000** | 1,129,000 | 731,000 |
| • A25-54: | **380,000** | 129,000 | 182,000 |

110.   CNN broadcast and published its statements that the Hunter Biden laptop is part of a Russian disinformation scheme and that the U.S. intelligence agencies are continuing to investigate Russia's participation without privilege to do so to its over 700,000 viewers.

111.   The statements broadcast on CNN and published on its website are of the kind that would tend to, and in fact did, prejudice the Plaintiff in the eyes of a substantial and respectable portion of the community at large.

112.   At the time CNN broadcast the defamatory false statements, CNN knew the backstory of the Hunter Biden laptop, having spoken with Plaintiff and written about the Plaintiff on October 14, 2020.

---

[7] https://www.adweek.com/tvnewser/week-of-march-28-basic-cable-ranker-fox-news-improves-to-no-1-in-total-primetime-viewers/504622/

113.   CNN acted with actual malice toward the Plaintiff by knowingly and intentionally broadcasting and publishing false and defamatory statements about the Hunter Biden laptop being tied to a Russian disinformation campaign in an attempt to harm Plaintiff's reputation.

114.   Alternatively, CNN acted with actual malice toward the Plaintiff by knowingly broadcasting and publishing the false and defamatory statements about Plaintiff with reckless disregard for the harm the false statements would cause to the Plaintiff.

115.   CNN knowingly broadcast and published the falsehoods to third parties – its over 700,000 viewers and its readership.

116.   CNN knew or should have known such false and defamatory statements would likely result in material and substantial injury to Plaintiff, as the statements accused the Plaintiff of knowingly participating in a Russian scheme to disrupt the 2020 presidential elections in the United States of America.

117.   CNN's broadcast and publication of the false and defamatory statements have subjected and continue to subject the Plaintiff to distrust, scorn, ridicule, hatred, and contempt.

118.   CNN's broadcast and publication of the false and defamatory statements impute that Plaintiff has committed an infamous crime, i.e., treason and/or other crimes against the United States of America by participating in a

Russian attempt to undermine American democracy and the 2020 Presidential election.

119.   As a direct and proximate result of the false and defamatory statements broadcast and published by CNN, Plaintiff has suffered, and continues to suffer, substantial damages, including having to close his business.

120.   Upon information and belief, CNN executives specifically told its journalists and television personalities to refer to the NY POST expose as having been resolved in the previously reported impeachment of President Donald Trump.[8]

121.   Instead, CNN continually broadcast and published the false and defamatory stories about the laptop being part of a Russian disinformation campaign designed to influence the 2020 United States Presidential elections.

122.   It is clear by its broadcasts and publications, CNN intended to harm the Plaintiff and any other party associated with the release of information from the laptop by broadcasting and publishing the false and defamatory statements about the Plaintiff.

123.   CNN acted with actual malice toward the Plaintiff in that it acted with knowledge that the statements were false or, at the very least, acted with reckless

---

[8] https://nypost.com/2020/12/02/cnn-caught-burying-the-posts-hunter-biden-expose-devine/

disregard to the harm the knowingly defamatory false statements would have on the Plaintiff, both personally and as a small business owner.

124.   CNN had actual knowledge of the falsity of the claims and understood the high probability that injury or damage would result to Plaintiff and, despite such knowledge, broadcast and published the false and defamatory statements and has issued no apology to the Plaintiff such as would begin to repair that damage.

125.   In the alternative, CNN's actions, as described above, were so reckless or wanting in care that they constituted a conscious disregard or indifference to the rights of Plaintiff.

### ***Prayer for Relief***

WHEREFORE, the Plaintiff JOHN PAUL MAC ISAAC prays for judgment against the Defendant CABLE NEWS NETWORK, INC. as follows:

(a)   Awarding Plaintiff compensatory damages of $1,500,000.00 to replace Plaintiff's lost income resulting from CNN's false and defamatory broadcast and publication;

(b)   Awarding Plaintiff punitive damages as a result of CNN's wrongdoing in an amount to be determined at trial;

(c)   Awarding Plaintiff pre- and post-judgment interest;

(d)   Awarding Plaintiff all attorneys' fees and costs associated with litigating this case;

(e)     Requiring CNN to make a public retraction of all false statements and to issue a public apology to Plaintiff; and

(f)     Such further relief as this Court deems just and proper.

### E. COUNT 4: DEFAMATION AND DEFAMATION PER SE POLITICO

126.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 – 52.

127.   Upon information and belief, POLITICO supported the candidacy of Joseph R. Biden, Jr. for president in the 2020 presidential elections or, alternatively, opposed the candidacy of Donald J. Trump.

128.   On October 19, 2020, POLITICO published an article entitled:[9]

**NATIONAL SECURITY**

## Hunter Biden story is Russian disinfo, dozens of former intel officials say

More than 50 former intelligence officials signed a letter casting doubt on the provenance of a New York Post story on the former vice president's son.

129.   The October 19, 2020 article relied on the "Public Statement on the Hunter Biden Emails," signed by more than 50 former intelligence officials (**EXHIBIT F**) for its reporting.

130.   The headline to the October 19, 2020 article says that the Hunter Biden story *IS* Russian disinformation, according to dozens of former intel officials.

---

[9] https://www.politico.com/news/2020/10/19/hunter-biden-story-russian-disinfo-430276

131.   POLITICO specifically referenced Plaintiff in its article:

The letter, signed on Monday, centers around a batch of documents released by the New York Post last week that purport to tie the Democratic nominee to his son Hunter's business dealings. Under the banner headline "Biden Secret E-mails," the Post reported it was given a copy of Hunter Biden's laptop hard drive by President Donald Trump's personal lawyer Rudy Giuliani, who said he got it from a Mac shop owner in Delaware who also alerted the FBI.

132.   The 50 former senior intelligence officials **_did not_** state that the Hunter Biden story **_IS_** Russian disinformation – that was POLITICO.

133.   POLITICO knowingly falsely stated as fact in the title of its article that the Hunter Biden story **_IS_** Russian disinformation.

134.   The article was written by journalist Natasha Bertrand, who seemingly has a history of transforming speculation into fact in the stories upon which she reports.[10]

135.   POLITICO knowingly published the article with a false headline stated as fact about Plaintiff and others involved in releasing the information about the laptop.

136.   POLITICO knowingly published the false factual statement about the Plaintiff without privilege to do so.

137.   The false and defamatory publication about the Plaintiff by POLITICO include, but are not limited to, allegations that the information

---

[10] https://www.washingtonpost.com/opinions/2020/02/28/how-politicos-natasha-bertrand-bootstrapped-dossier-credulity-into-tv-gig/

published by the NY POST, which POLITICO clearly identifies the information as coming from Plaintiff, was part of a Russian disinformation campaign, thereby directly implying that the Plaintiff part of a Russian disinformation campaign and/or, more specifically, a Russian agent.

138.   The defamatory publication was made negligently; without reasonable care as to its truth or falsity, with knowledge of its falsity, and/or with reckless disregard for the truth.

139.   The defamatory publication was published and viewed by POLITICO's readers.

140.   POLITICO's publication alleges that Plaintiff committed crimes including (but not limited to) working with Russians to spread "disinformation" relating to the son of Democratic Party nominee, now President, Joseph Biden, thereby implicating Plaintiff in the commission of a treasonous act by being part of an attempt to undermine American democracy and the 2020 Presidential election.

141.   POLITICO's publication is of the kind that would tend to, and in fact did, prejudice the Plaintiff in the eyes of a substantial and respectable portion of the community at large.

142.   POLITICO knowingly published the falsehoods as facts to third parties – its readers.

143.   POLITICO knew or should have known such false statements in the publication would likely result in material and substantial injury to Plaintiff, as the statements call into question Plaintiff's loyalty to the United States.

144.   POLITICO knew or should have known such false statements in the publication would likely result in subjecting Plaintiff to distrust, scorn, ridicule, hatred, and contempt, which continues to this day.

145.   POLITICO's publication of false statements impute that Plaintiff has committed an infamous crime, i.e., treason and/or other crimes against the United States of America by participating in a Russian attempt to undermine American democracy and the 2020 Presidential election.

146.   As a direct and proximate result of the defamatory statements published by POLITICO, Plaintiff has suffered, and continues to suffer, substantial damages, including the loss of his business.

147.   Upon information and belief, and based on the prejudicial October 19th article, POLITICO intended to harm the Plaintiff (among others) through the publication of the false statements.

148.   POLITICO had actual knowledge of the falsity of the claims and understood the high probability that injury or damage would result to Plaintiff and, despite such knowledge, published the false and defamatory statement and has issued no apology to the Plaintiff such as would repair that damage.

149.   In the alternative, POLITICO's actions, as described above, were so reckless or wanting in care that they constituted a conscious disregard or indifference to the rights of Plaintiff.

### *Prayer for Relief*

WHEREFORE, the Plaintiff JOHN PAUL MAC ISAAC prays for judgment against the Defendant POLITICO as follows:

(a)     Awarding Plaintiff compensatory damages of $1,500,000.00 to replace Plaintiff's lost income as a result of POLITICO's wrongdoing;

(b)     Awarding Plaintiff punitive damages as a result of POLITICO's wrongdoing in an amount to be determined at trial;

(c)     Awarding Plaintiff pre- and post-judgment interest;

(d)     Awarding Plaintiff all attorneys' fees and costs associated with litigating this case;

(e)     Requiring POLITICO to make a public retraction of all false statements and to issue a public apology to Plaintiff; and

(f)     Such further relief as this Court deems just and proper.

### F. COUNT 5: DEFAMATION AND DEFAMATION PER SE BFPCC, INC.

150.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 – 52.

151.   BFPCC, which is an acronym for "Biden for President Campaign Committee," is a Delaware corporation formed to operate as the Presidential campaign for President Joseph R. Biden, Jr.

152.   As such, BFPCC supported the candidacy of Joseph R. Biden, Jr. for president in the 2020 presidential elections.

153.   On or about October 14, 2020, as quoted in a POLITICO article, Biden campaign officials stated that the NY POST exposé "is a Russian disinformation operation." *See* https://www.politico.com/news/2020/10/14/biden-campaign-lashes-out-new-york-post-429486.

154.   Senior Biden Campaign Advisor, Symone D. Sanders, on behalf of BFPCC, stated in an interview on MSNBC that, "[i]f the president [Trump] decides to amplify these latest smears against the vice president and his only living son, that is Russian disinformation." *See* https://greenwald.substack.com/p/biden-the-media-and-cia-labeled-the.

155.   Biden Deputy Campaign Manager Kate Bedingfield, on behalf of BFPCC, said of the information from the laptop, "I think we need to be very, very clear that what [Trump is] doing here is amplifying Russian misinformation." *See* Id.

156.   The Candidate himself, Joseph R. Biden, Jr., representing the views of BFPCC, said, "[t]here are 50 former national intelligence folks who said that what

he's accusing me of is a Russian plant. Five former heads of the CIA, both parties, say what he's saying is a bunch of garbage. Nobody believes it except his good friend Rudy Giuliani." *See* https://www.nationalreview.com/corner/sure-seems-joe-biden-knowingly-lied-about-the-hunter-biden-laptop-story/.

157.   Joseph R. Biden, Jr. also said, "[t]he intelligence community warned the president that Giuliani was being fed disinformation from the Russians. We also know Putin is trying to spread disinformation about Joe Biden. When you put the combination of Russia, Giuliani, and the president together ... it is what it is. A smear campaign." *See* https://krcrtv.com/joe-biden-calls-hunter-email-story-a-smear-stays-quiet-about-2017-business-meeting.

158.   The members/employees of BFPCC knew or should have known that the claims that the Hunter Biden Laptop story is Russian disinformation were false.

159.   Despite such knowledge, BFPCC knowingly published and broadcast the falsehoods as facts to third parties – the supporters of candidate Joseph R. Biden, Jr.

160.   BFPCC knew or should have known such false statements would likely result in material and substantial injury to Plaintiff, as the statements call into question Plaintiff's loyalty to the United States.

161.   BFPCC knew or should have known such false statements would likely result in subjecting Plaintiff to distrust, scorn, ridicule, hatred, and contempt, which continues to this day.

162.   BFPCC's false statements impute that Plaintiff has committed an infamous crime, i.e., treason and/or other crimes against the United States of America by participating in a Russian attempt to undermine American democracy and the 2020 Presidential election.

163.   As a direct and proximate result of the defamatory statements broadcast by BFPCC, Plaintiff has suffered, and continues to suffer, substantial damages, including the loss of his business.

164.   BFPCC had actual knowledge of the falsity of the claims and understood the high probability that injury or damage would result to Plaintiff and, despite such knowledge, broadcast the false and defamatory statement and has issued no apology to the Plaintiff such as would repair that damage.

165.   In the alternative, BFPCC's actions, as described above, were so reckless or wanting in care that they constituted a conscious disregard or indifference to the rights of Plaintiff.

### ***Prayer for Relief***

WHEREFORE, the Plaintiff JOHN PAUL MAC ISAAC prays for judgment against the Defendant BFPCC, Inc. as follows:

(a)     Awarding Plaintiff compensatory damages of $1,500,000.00 to replace Plaintiff's lost income as a result of BFPCC's wrongdoing;

(b)     Awarding Plaintiff punitive damages as a result of BFPCC's wrongdoing in an amount to be determined at trial;

(c)     Awarding Plaintiff pre- and post-judgment interest;

(d)     Awarding Plaintiff all attorneys' fees and costs associated with litigating this case;

(e)     Requiring BFPCC issue a public apology to Plaintiff; and

(f)     Such further relief as this Court deems just and proper.

## G.     COUNT 5: DEFAMATION AND DEFAMATION PER SE ROBERT HUNTER BIDEN

166.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 – 52.

167.   HUNTER is the son of President Joseph R. Biden, Jr.

168.   HUNTER supported the candidacy of Joseph R. Biden, Jr. for president in the 2020 presidential elections.

169.   HUNTER knowingly left his laptop with Plaintiff on April 12, 2019.

170.   Soon thereafter HUNTER returned to Plaintiff's shop to leave an external hard drive to which Plaintiff could transfer the data from HUNTER's laptop.

171.   HUNTER never returned to Plaintiff's shop pick up his laptop.

172.   When asked about the laptop in a television interview broadcast around the world, HUNTER stated, "There could be a laptop out there that was stolen from me. It could be that I was hacked. It could be that it was the – that it was Russian intelligence. It could be that it was stolen from me. Or that there was a laptop stolen from me." *See* https://edition.cnn.com/2021/04/02/politics/hunter-biden-laptop/index.html.

173.   HUNTER knew it was his laptop.

174.   HUNTER's attorney, George Mesires contacted Plaintiff on October 13, 2020 about the laptop.

**From:** "Mesires, George R." ██████████████████
**Date:** October 13, 2020 at 6:58:59 PM EDT
**To:** "macisaac@demacshop.com" ██████████████
**Subject: George Mesires contact information**

John Paul:

Thank you for speaking with me tonight. As I indicated, I am a lawyer for Hunter Biden and I appreciate you reviewing your records on this matter. Thank you.

George

**George R. Mesires**
Partner
████████████████████████████

Connect: vCard

████████████     direct

**Faegre Drinker Biddle & Reath LLP**
311 S. Wacker Drive, Suite 4300
Chicago, Illinois 60606, USA

175.   HUNTER knowingly broadcast the false and defamatory information about his laptop to third parties – viewers of the interview.

176.   HUNTER's knowing broadcast of the false and defamatory information about his laptop imputed that Plaintiff was involved in one or more crimes including, theft of his laptop, hacking of his laptop, or being part of a plot by Russian intelligence.

177.   HUNTER knew or should have known such false statements would likely result in material and substantial injury to Plaintiff, as the statements impute that Plaintiff has committed one or more crimes.

178.   HUNTER knew or should have known such false statements in the publication would likely result in subjecting Plaintiff to distrust, scorn, ridicule, hatred, and contempt, which continues to this day.

179.   HUNTER's false statements impute that Plaintiff has committed an infamous crime, i.e., treason and/or other crimes against the United States of America by participating in a Russian attempt to undermine American democracy and the 2020 Presidential election.

180.   As a direct and proximate result of the defamatory statements by HUNTER, Plaintiff has suffered, and continues to suffer, substantial damages, including the loss of his business.

181.   HUNTER had actual knowledge of the falsity of the claims and understood the high probability that injury or damage would result to Plaintiff and, despite such knowledge, made the false and defamatory statement and has issued no apology to the Plaintiff such as would repair that damage.

182.   In the alternative, HUNTER's actions, as described above, were so reckless or wanting in care that they constituted a conscious disregard or indifference to the rights of Plaintiff.

### *Prayer for Relief*

WHEREFORE, the Plaintiff JOHN PAUL MAC ISAAC prays for judgment against the Defendant HUNTER, Inc. as follows:

(a)    Awarding Plaintiff compensatory damages of $1,500,000.00 to replace Plaintiff's lost income as a result of HUNTER's wrongdoing;

(b)    Awarding Plaintiff punitive damages as a result of HUNTER's wrongdoing in an amount to be determined at trial;

(c)    Awarding Plaintiff pre- and post-judgment interest;

(d)    Awarding Plaintiff all attorneys' fees and costs associated with litigating this case;

(e)    Requiring HUNTER issue a public apology to Plaintiff; and

(f)    Such further relief as this Court deems just and proper.

### H. COUNT 6: CIVIL CONSPIRACY TO COMMIT DEFAMATION ALL DEFENDANTS

183.   Plaintiff incorporates by reference all allegations contained in Paragraphs 1 – 183.

184.   All Defendants expressed support for then-Presidential candidate, Joseph R. Biden, in the 2020 U.S. Presidential election and/or opposed incumbent candidate, Donald J. Trump.

185.   The information contained in the NY POST exposé hurt the candidacy of Joseph R. Biden, Jr. and polls show that it could have resulted in the loss of the presidential election.

186.   All Defendants knew that the information contained in the NY POST exposé would hurt the candidacy of Joseph R. Biden and, potentially, prevent his election.

187.   Voters who voted for Joseph R. Biden have indicated that, if they had known more about the Hunter Biden laptop, they likely would not have voted for Joseph R. Biden.

188.   All Defendants acted in concert to prevent the re-election of President Donald J. Trump, which included defaming the Plaintiff.

189.   All Defendants openly participated in the efforts to "kill" the Hunter Biden laptop story by making accusations that Plaintiff was a willing participant in a Russian plot to spread disinformation to impact the U.S. presidential election.

190.   All Defendants openly participated in the efforts to falsely communicate to the general public that the Hunter Biden laptop story *is* Russian disinformation and that Plaintiff is working with the Russians to influence the U.S. Presidential elections.

191.   In doing so, the Defendants have unlawfully defamed the Plaintiff on numerous occasions.

192.   Each Defendant provided substantial assistance to the other Defendants by repeating the defamatory statements to bolster the false claims.

193.   Each Defendant assisted the other Defendants to accomplish a lawful purpose (the election of Joseph R. Biden, Jr.) through unlawful means (defamation).

194.   The defamatory statements made about the Plaintiff by the Defendants in furtherance of a conspiracy to cast doubt on the validity of the information contained on the Hunter Biden Laptop resulted in significant damage to the Plaintiff's reputation and his business which closed soon after the defamatory statements were broadcast and published.

195.   As a result a result of the reputational damage to Plaintiff and the closing of his business, Plaintiff has suffered loss of his business and income.

### *Prayer for Relief*

WHEREFORE, the Plaintiff JOHN PAUL MAC ISAAC prays for judgment

against the Defendants, jointly and severally, as follows:

(a)     Awarding Plaintiff compensatory damages of $1,500,000.00 to

replace Plaintiff's lost income as a result of Defendants' wrongdoing;

(b)     Awarding Plaintiff punitive damages as a result of Defendants'

wrongdoing in an amount to be determined at trial;

(c)     Awarding Plaintiff pre- and post-judgment interest;

(d)     Awarding Plaintiff all attorneys' fees and costs associated with

litigating this case;

(e)     Requiring all Defendants to issue public apologies to Plaintiff; and

(f)     Such further relief as this Court deems just and proper.

## I.  COUNT 8: AIDING AND ABETTING
## ALL DEFENDANTS

196.    Plaintiff incorporates by reference all allegations contained in

Paragraphs 1 – 183.

197.    All Defendants expressed support for then-Presidential candidate,

Joseph R. Biden, in the 2020 U.S. Presidential election and/or opposed incumbent

candidate, Donald J. Trump.

198.   The information contained in the NY POST exposé hurt the candidacy of Joseph R. Biden, Jr. and polls show that it could have resulted in the loss of the presidential election.

199.   All Defendants knew that the information contained in the NY POST exposé would hurt the candidacy of Joseph R. Biden and, potentially, prevent his election.

200.   Voters who voted for Joseph R. Biden have indicated that, if they had known more about the Hunter Biden laptop, they likely would not have voted for Joseph R. Biden.

201.   Each Defendant knowingly provided assistance to the other Defendants by falsely spreading the defamatory information to prevent the re-election of President Donald J. Trump.

202.   All Defendants knowingly participated in the efforts to "kill" the Hunter Biden laptop story by making accusations that Plaintiff was a willing participant in a Russian plot to spread disinformation to impact the U.S. presidential election.

203.   All Defendants knowingly participated in the efforts to falsely communicate to the general public that the Hunter Biden laptop story *is* Russian disinformation and that Plaintiff is working with the Russians to influence the U.S. Presidential elections.

204.   In doing so, the Defendants have unlawfully defamed the Plaintiff on numerous occasions.

205.   Each Defendant provided substantial assistance to the other Defendants by repeating the defamatory statements to bolster the false and defamatory claims.

206.   Each Defendant assisted the other Defendants to accomplish a lawful purpose (the election of Joseph R. Biden, Jr.) through unlawful means (defamation).

207.   The defamatory statements made about the Plaintiff by the Defendants in furtherance of a conspiracy to cast doubt on the validity of the information contained on the Hunter Biden Laptop resulted in significant damage to the Plaintiff's reputation and his business which closed soon after the defamatory statements were broadcast and published.

208.   As a result a result of the reputational damage to Plaintiff and the closing of his business, Plaintiff has suffered loss of his business and income.

### ***Prayer for Relief***

WHEREFORE, the Plaintiff JOHN PAUL MAC ISAAC prays for judgment against the Defendants, jointly and severally, as follows:

(a)   Awarding Plaintiff compensatory damages of $1,500,000.00 to replace Plaintiff's lost income as a result of Defendants' wrongdoing;

(b)     Awarding Plaintiff punitive damages as a result of Defendants'

wrongdoing in an amount to be determined at trial;

(c)     Awarding Plaintiff pre- and post-judgment interest;

(d)     Awarding Plaintiff all attorneys' fees and costs associated with

litigating this case;

(e)     Requiring all Defendants to issue public apologies to Plaintiff; and

(f)     Such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues raised herein.


Date: October 17, 2022                  Respectfully submitted,



**THE POLIQUIN FIRM LLC**

/s/ Ronald G. Poliquin
RONALD G. POLIQUIN, ESQUIRE
Delaware Bar ID No. 4447
1475 S. Governors Ave.
Dover, DE  19904
(302) 702-5501
ron@poliquinfirm.com

 /s/ Brian R. Della Rocca, Esquire
**Brian R. Della Rocca, Esquire**
Bar ID: 21781
Compass Law Partners

51 Monroe Street, Suite 408
Rockville, Maryland 20850
Ph: (240) 560-3030
Fax: (301) 740-2297
bdellarocca@compass-law.com

***Attorneys for Plaintiff***