EFiled:  Jan 30 2023 04:54PM EST
Transaction ID 69010021
Case No. S22C-10-012 RHR

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOHN PAUL MAC ISAAC,

      Plaintiff,

v.

CABLE NEWS NETWORK, INC.,
ADAM BENNETT SCHIFF,
POLITICO LLC,
ROBERT HUNTER BIDEN, AND
BFPCC, Inc.,

      Defendants.

C.A. No. S22C-10-012 RHR

## DEFENDANT CNN'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Alison Schary (*pro hac vice*)
Davis Wright Tremaine LLP
1301 K St NW Suite 500 East
Washington, DC 20005
(202) 973-4200
alisonschary@dwt.com

Hilary Oran (*pro hac vice*)
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
(212) 489-8230
hilaryoran@dwt.com

David J. Soldo (#4309)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
(302) 888-6950
dsoldo@morrisjames.com

*Attorneys for Defendant*
*Cable News Network, Inc.*

Dated:  January 30, 2023

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................1

FACTUAL BACKGROUND................................................................................2

I.      Parties................................................................................................2

II.     Plaintiff Allegedly Recovers Data from Hunter Biden's Laptop and
Provides it to the FBI and Rudy Giuliani, Among Others ..............................2

III.    The New York Post Publishes a Story about the Laptop's Contents..............3

IV.   Plaintiff Shares His Story with the Media........................................................4

V.    The FBI Investigates Whether The Emails Were Part of a Russian
Disinformation Campaign ................................................................................5

VI.   The CNN Publications At Issue In This Case .................................................8

        A.    The CNN Interview...............................................................................8

        B.    The CNN Article..................................................................................9

VII.  Plaintiff Sues CNN, Among Others ................................................................9

ARGUMENT ........................................................................................................10

I.      Delaware Courts Regularly Dispose of Defamation Claims on Dismissal
Motions ...........................................................................................................10

II.     Plaintiff Fails to State any Defamation Claim Against CNN.........................12

        A.    Plaintiff Does Not Identify Any Statements "Concerning" Him........12

        B.    The Statements are Protected by the Fair Report Privilege ...............16

        C.    Plaintiff Fails to Plead that CNN Acted with Actual Malice.............18

                1.    Plaintiff is a Limited-Purpose Public Figure Who Must
Plead and Prove Actual Malice..................................................18

                2.    The FAC Fails to Plead Actual Malice......................................23

III.    Plaintiff's Remaining Claims Fail as Well....................................................28

CONCLUSION .......................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Post*,
  2012 WL 5509619 (Del. Super. Ct. Sept. 26, 2012) ........................................26

*Arpaio v. Zucker*,
  414 F. Supp. 3d 84 (D.D.C. 2019).....................................................................28

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  466 U.S. 485 (1984)...........................................................................................18

*Bredberg v. Bos. Sci. Corp.*,
  2021 WL 2816897 (Del. Super. Ct. July 2, 2021)...........................................4, 6

*Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings. LLC*,
  27 A.3d 531 (Del. 2011) ....................................................................................10

*Cousins v. Goodier*,
  2021 WL 3355471 (Del. Super. Ct. July 30, 2021)...........................................28

*Doe v. Cahill*,
  884 A.2d 451 (Del. 2005) ..................................................................................12

*Dongguk Univ. v. Yale Univ.*,
  734 F.3d 113 (2d Cir. 2013) ..............................................................................24

*Gilmore v. Jones*,
  370 F. Supp. 3d 630 (W.D. Va. 2019)................................................................21

*Gubarev v. BuzzFeed, Inc.*,
  340 F. Supp. 3d 1304 (S.D. Fla. 2018)..............................................................16

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989)...........................................................................................28

*Helicopter Helmet, LLC v. Gentex Corp.*,
  2018 WL 2023489 (D. Del. May 1, 2018) .........................................................12

*In re Santa Fe Pac. Corp. S'holder Litig.*,
     669 A.2d 59 (Del. 1995) ..................................................................................8

*Kirch v. Liberty Media Corp.*,
     449 F.3d 388 (2d Cir. 2006) ...........................................................................13

*Mac Isaac v. Twitter, Inc.*,
     557 F. Supp. 3d 1251 (S.D. Fla. 2021) ...........................................................14

*Marcone v. Penthouse Int'l Mag. For Men*,
     754 F.2d 1072 (3d Cir. 1985) ...................................................................*passim*

*McDowell v. Paiewonsky*,
     769 F.2d 942 (3d Cir. 1985) .....................................................................22, 23

*New York Times Co. v. Sullivan*,
     376 U.S. 254 (1964)..................................................................................13, 18

*Newton v. Nat'l Broad. Co.*,
     930 F.2d 662 (9th Cir. 1990) .........................................................................26

*O'Gara v. Coleman*,
     2020 WL 752070 (Del. Ch. Ct. Feb. 14, 2020) ..............................................23

*Orthopaedic Assocs. of S. Delaware, P.A. v. Pfaff*,
     2018 WL 822020 (Del. Super. Ct. Feb. 9, 2018) .......................................11, 16

*Owens v. Lead Stories, LLC*,
     2021 WL 3076686 (Del. Super. Ct. July 20, 2021)....................................11, 19

*Page v. Oath Inc.*,
     2021 WL 528472 (Del. Super. Ct. Feb. 11, 2021) .......................................4, 28

*Page v. Oath Inc.*,
     270 A.3d 833 (Del. 2022) ......................................................................*passim*

*Perks v. Town of Huntington*,
     251 F. Supp. 2d 1143 (E.D.N.Y. 2003) ..........................................................21

*Price v. E.I. duPont de Nemours & Co., Inc.*,
     26 A.3d 162 (Del. 2011) ................................................................................11

*Re v. Gannett Co.*,
   480 A.2d 662 (Del. Super. Ct. 1984)....................................................................19

*Read v. News-Journal Co.*,
   474 A.2d 119 (Del. 1984) ...................................................................................16

*Reuber v. Food Chem. News, Inc.*,
   925 F.2d 703 (4th Cir. 1991) ...............................................................................21

*Rosanova v. Playboy Enterprises, Inc.*,
   580 F.2d 859 (5th Cir.1978) ................................................................................23

*Russell v. Delaware Online*,
   2016 WL 3437597 (D. Del. June 20, 2016) .................................................16, 17

*Schiavone Const. Co. v. Time, Inc.*,
   847 F.2d 1069 (3d Cir. 1988) .........................................................................19, 21

*Short v. News-Journal Co.*,
   212 A.2d 718 (Del. 1965) ....................................................................................17

*ShotSpotter Inc. v. VICE Media, LLC*,
   2022 WL 2373418 (Del. Super. Ct. June 30, 2022) ...................................*passim*

*St. Amant v. Thompson*,
   390 U.S. 727 (1968)..............................................................................................24

*Time Inc. v. Pape*,
   401 U.S. 279 (1971)..............................................................................................26

*Williams v. Howe*,
   2004 WL 2828058 (Del. Super. Ct. May 3, 2004) ............................................13

*Woods v. Evansville Press Co., Inc.*,
   791 F.2d 480 (7th Cir. 1986) ...............................................................................27

**Other Authorities**

Super. Ct. Civ. R. 12(b)(6)................................................................................10, 29

v

## PRELIMINARY STATEMENT

This defamation lawsuit is about statements in two publications by Cable News Network, Inc. ("CNN")—an interview with Congressman Adam Schiff and an article about an FBI investigation—that do not name, picture, allude to or in any other way identify the Plaintiff. Instead, they discuss a topic of significant national importance—what was then an ongoing FBI investigation into whether published emails, allegedly from Hunter Biden's laptop, were connected to Russian intelligence efforts. But Plaintiff's efforts to turn a controversial political question into a personal defamation claim fail for multiple independent reasons.

First, Plaintiff has not identified any allegedly defamatory statements that mention or reference him in any way. Plaintiff's theory that he is "synonymous with Hunter Biden's laptop" does not satisfy the foundational requirement that defamation plaintiffs can only sue over statements "concerning" them. Certainly, it cannot be the case that every news report about Hunter Biden's laptop or its contents is a story about Plaintiff personally. Second, the publications at issue—CNN's interview with the then-chair of the House Intelligence Committee and an article about an official report from the FBI to Congress about an ongoing FBI investigation—accurately report on government proceedings and are protected by Delaware's fair report privilege. Finally, Plaintiff does not and cannot identify any facts to support his allegation that CNN acted with actual malice. And because

1

Plaintiff fails to state a defamation claim, his claims for "conspiracy to defame" (Count 6) and "aiding and abetting" (Count 8) fail as well.

For these reasons, CNN respectfully requests that the Court dismiss all of Plaintiff's claims against it with prejudice.

## FACTUAL BACKGROUND

### I.    PARTIES

Plaintiff John Paul Mac Isaac is a resident of Delaware and owner of The Mac Shop, Inc., a computer repair store.  First Amended Complaint ¶¶ 12-14 (hereinafter "FAC").[1]

Defendant Cable News Network, Inc. ("CNN") owns and operates news platforms and services, including the television network CNN and the website www.cnn.com. *Id*. ¶ 3.

### II.   PLAINTIFF ALLEGEDLY RECOVERS DATA FROM HUNTER BIDEN'S LAPTOP AND PROVIDES IT TO THE FBI AND RUDY GIULIANI, AMONG OTHERS

According to the FAC, in April 2019, Hunter Biden ("Hunter"), son of President Joe Biden, brought damaged computers to Plaintiff's shop for repair.  *Id*. ¶ 19.  Plaintiff alleges that after he completed his work, he attempted to contact

---

[1] Plaintiff's FAC describes Exhibits A-L identically to his original Complaint.  Thus, even though Plaintiff did not re-file the same set of exhibits with the FAC, CNN will treat those exhibits as incorporated by reference into the FAC for purposes of this motion.

Hunter about paying for the repair services and retrieving the data Plaintiff had recovered, but that Hunter never returned or paid the invoice. *Id*. ¶¶ 21-24.

Plaintiff stated that he became "uncomfortable" with the information he had seen on the laptop. FAC Ex. D at 2. Accordingly, in July 2019, Plaintiff's father attempted to deliver the hard drive to an FBI field office, but was "turned . . . away." *Id.* In mid-October 2019, an FBI agent reached out to Plaintiff's father about the laptop and subsequently met with Plaintiff. *Id.* On December 9, 2019, the FBI served Plaintiff with a grand jury subpoena for the laptop and hard drive, and Plaintiff complied with the subpoena. FAC ¶ 27; *id.* Ex. B.

Two months after Plaintiff provided the hard drive to the FBI, Plaintiff voluntarily began contacting members of Congress about the laptop's contents. FAC ¶ 26; *id.* Ex. D at 3. This outreach continued from February 2020 through at least July 2020. FAC Ex. D. In August 2020, Plaintiff willingly shared a copy of the recovered data with Rudy Giuliani, President Trump's personal attorney at the time. FAC ¶ 28; *id.* Ex. D at 3. Finally, in September 2020, Plaintiff made the choice to submit information about the laptop to Senator Ron Johnson's office. FAC Ex. D at 3.

## III.  THE NEW YORK POST PUBLISHES A STORY ABOUT THE LAPTOP'S CONTENTS

On October 14, 2020—weeks before the presidential election—the New York Post published an article titled "Smoking-gun email reveals how Hunter Biden

introduced Ukrainian businessman to VP dad." Declaration of Alison Schary ("Schary Decl.") Ex. 1.[2] The article, which was the first public disclosure of the laptop, described various emails and other content as being from a "massive trove of data recovered from a laptop computer" believed to belong to Hunter. *Id.* The article explained that the New York Post had obtained a copy of the data trove from Giuliani, and that the computer and hard drive were "seized by the FBI in December [2019]." *Id.* at 3.

## IV.   PLAINTIFF SHARES HIS STORY WITH THE MEDIA

The New York Post story sparked widespread media coverage. *E.g.*, FAC ¶¶ 41, 43, 57, 128, Schary Decl. Exs. 2-4. As part of this media coverage, on

---

[2] The Court may consider the New York Post article on this motion because it is incorporated by reference in the FAC (*e.g., id.* ¶¶ 32, 33) and is offered for the fact of its contents, not the truth of them. *See Bredberg v. Bos. Sci. Corp.*, 2021 WL 2816897, at *3 (Del. Super. Ct. July 2, 2021) ("The Supreme Court of Delaware has . . . recognized three specific instances when a trial court may look beyond the complaint: (1) when a document is integral to a claim and incorporated into a complaint; (2) when the document is not being relied upon to prove the truths of its contents; or (3) when the document is an adjudicative fact subject to judicial notice."); *Page v. Oath Inc.*, 2021 WL 528472 (Del. Super. Ct. Feb. 11, 2021), *aff'd,* 270 A.3d 833, 836 (Del. 2022) (considering "documents referred to and relied on in the amended complaint" on motion to dismiss defamation claim); *ShotSpotter Inc. v. VICE Media, LLC*, 2022 WL 2373418, at *5 (Del. Super. Ct. June 30, 2022) (taking judicial notice of documents referenced in complaint, other news articles referenced in article at issue, and documents offered "to consider what is contained therein as opposed to the accuracy of the facts in [them]" on motion to dismiss defamation claim).

October 14, 2020, Plaintiff chose to give interviews to multiple media outlets, including the Daily Beast and CNN. *Id.* ¶¶ 41, 112.

On October 28, 2020, Plaintiff's counsel, at Plaintiff's request, prepared an op-ed on Plaintiff's behalf and sent it to the Washington Post and the Wall Street Journal. FAC ¶ 42; *id.* Ex. D. The op-ed was ultimately published on October 30, 2020 on justthenews.com. *Id.* ¶ 48. In the op-ed, Plaintiff described how he came into possession of the laptop, provided it to the FBI, and brought it to the attention of Giuliani and multiple members of Congress. Plaintiff noted in the op-ed that he "cannot confirm that the full extent of what was released by Rudy Giuliani was, in fact, on the laptop" and "do[es] not know if all emails released by the New York Post were actually on the hard drive." FAC Ex. D at 3-4.

## V.   THE FBI INVESTIGATES WHETHER THE EMAILS WERE PART OF A RUSSIAN DISINFORMATION CAMPAIGN

The day after the New York Post article was published, the Washington Post reported that U.S. intelligence officials warned the White House in 2019 that Rudy Giuliani was the target of an influence operation by Russian intelligence related to his attempts to obtain information about Hunter's business dealings in Ukraine. Schary Decl. Ex. 2. That same day, NBC reported that the FBI was investigating

whether the emails about Hunter's business dealings purportedly retrieved from the laptop were connected to Russian disinformation efforts. *See* Schary Decl. Ex. 3.[3]

On October 19, 2020, more than 50 former intelligence officials—including a former Director of National Intelligence, former directors of the Central Intelligence Agency, and a former Secretary of Defense—issued a public letter warning that the published emails have "all the classic earmarks of a Russian information operation." FAC Ex. F at 1.  Among the factors that made them "suspicious of Russian involvement," the letter-writers noted that the U.S. intelligence community had publicly identified Russia's objective to "undermine the candidacy" of Biden (*id*.); that Russia had reportedly targeted and gained access to Burisma's emails in late 2019 (*id*. at 2); that a Ukrainian politician sanctioned by the Treasury Department as a longtime Russian agent had reportedly "passed purported materials on Burisma and Hunter Biden to Giuliani" (*id*.); and that the Trump White House had reportedly been warned by the intelligence agencies that Giuliani was "the target of an influence

---

[3] Exhibit 2 to the Schary Declaration is the Washington Post article referenced and discussed in the CNN Interview.  *See* Schary Decl. Ex. 5, Ex. 6 at 2:55-4:23.  This Court may take judicial notice of this article because it is integral to the Plaintiff's claims and referenced in the publication at issue, and because it is being offered only for the fact of its contents and not for the truth of them.  The NBC article (Schary Decl. Ex. 3) is similarly subject to judicial notice because it is offered only for the fact of its publication, not for the truth of its contents.  The NBC article is also linked in Exhibit 7 to the Schary Declaration, which is the CNN Article cited and quoted in the FAC at ¶ 104 & n.5.  *See Bredberg*, 2021 WL 2816897, at *3; *ShotSpotter*, 2022 WL 2373418, at *5.

operation by Russian intelligence." *Id.*  The letter referenced media reports that the FBI was investigating potential Russian involvement.

Also on October 19, 2020, then-Director of National Intelligence John Ratcliffe stated during a Fox News appearance that there was "no intelligence that supports that [the laptop is part of a Russian disinformation campaign]" and "we have shared no intelligence with Chairman Schiff or any other member of Congress that Hunter Biden's laptop is part of some Russian disinformation campaign."  FAC ¶¶ 45, 64.  The following day, Jill C. Tyson ("Tyson"), the FBI's assistant director for congressional affairs, wrote a letter responding to questions from Homeland Security Committee Chairman Senator Ron Johnson about the laptop and its contents.  *Id.* ¶ 46, Ex. G.  In relevant part, the letter stated:

> Regarding the subject of your letter, we have nothing to add at this time to the October 19th public statement by the Director of National Intelligence about the available actionable intelligence.  If actionable intelligence is developed, the FBI in consultation with the Intelligence Community will evaluate the need to provide defensive briefings to you and the Committee pursuant to the established notification framework.

> Finally, as the FBI advised the Committee in its letter, dated October 5, 2020, consistent with longstanding Department of Justice (Department) policy and practice, the FBI can neither confirm nor deny the existence of any ongoing investigation or persons or entities under investigation, including to Members of Congress.

FAC Ex. G at 1.

## VI.   THE CNN PUBLICATIONS AT ISSUE IN THIS CASE

### A.   The CNN Interview

On October 16, 2020, Congressman Adam Schiff appeared on The Situation Room with Wolf Blitzer on CNN for a live television interview (the "CNN Interview").  FAC ¶ 57; Schary Decl. Exs. 5, 6.[4]  During the interview, Blitzer asked Rep. Schiff for his perspective on the reported federal investigation into the Hunter/Ukraine emails, and whether it would "surprise [Schiff] at all that this information Rudy Giuliani is peddling very well could be connected to some sort of Russian government disinformation campaign."  Schary Decl. Ex. 5 at 9; Ex. 6 at 0:27.   Rep. Schiff noted that he had not received much information from the intelligence community about its investigation, but expressed concern about Russian efforts to amplify narratives about Hunter and Ukraine "for well over a year now," since before President Trump's first impeachment.  Schiff also discussed Giuliani's ongoing role in pushing this narrative, his previously reported connections to Russian agents, and the broader implications of a Russian disinformation campaign.

---

[4] Plaintiff's Exhibit I purports to be a transcript of the CNN Interview at issue, but the transcript is incomplete (likely due to computer formatting issues).  Exhibit 5 to the Schary Declaration is a complete version of the same transcript attached by Plaintiff as Exhibit I.  Exhibit 6 to the Schary Declaration is a video of the CNN Interview.  *See In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69-70 (Del. 1995) (recognizing that courts consider the relevant publication in defamation cases on a Rule 12(b)(6) motion without converting the motion to one for summary judgment).

*Id.*   Banners onscreen during the interview referenced the ongoing federal investigation and the Washington Post's recent report about the Trump White House being warned that Giuliani was a target for Russian misinformation.  Neither Blitzer nor Rep. Schiff ever mentioned Plaintiff, his repair shop, or even the laptop during the CNN Interview.

### B.     The CNN Article

CNN, like other news outlets, also reported on FBI assistant director Tyson's letter.  On October 21, 2020, CNN published a digital article titled "FBI says it has 'nothing to add' to Ratcliffe's claim on Russian disinformation" (the "CNN Article"), which summarized and quoted from the letter.  Schary Decl. Ex. 7.[5]

### VII.  PLAINTIFF SUES CNN, AMONG OTHERS

Nearly two years later on October 17, 2022, Plaintiff filed this lawsuit against CNN as well as Politico, Rep. Schiff, Hunter, and the Biden Presidential Campaign ("BFPCC").  First, Plaintiff alleges that he was defamed by the CNN Interview because Rep. Schiff made "false and defamatory" statements "indicating that he had confirmed that the source of the information from the laptop was Russia," and in

---

[5] Exhibit 7 is a copy of the CNN Article, which is one of the two publications at issue in Plaintiff's claims against CNN.  Plaintiff linked to and quoted from this article in his FAC (*id.* ¶ 106 n. 6), but did not attach it as an exhibit.  Because the CNN Article is integral to and incorporated into the FAC, the Court may consider it on a motion to dismiss.  *See supra* at 4 n.2.

doing so implied Plaintiff committed "treason . . . by participating in a Russian attempt to undermine American democracy."  FAC ¶¶ 102-105, 118.

Second, Plaintiff alleges he was defamed by the CNN Article because it said that FBI assistant director Tyson's letter "suggested that the [FBI] review was continuing."  Plaintiff claims this defames him by "creat[ing] a strong implication that U.S. intelligence officials actually believed Russia was involved in the release of information from Hunter Biden's laptop." *Id*. ¶¶ 106, 108.

Plaintiff also alleges that CNN (and all other defendants) are liable for "civil conspiracy to commit defamation" and for "aiding and abetting." *Id*. ¶¶ 183-208.

## **ARGUMENT**

This Court should dismiss the FAC because CNN did not defame Plaintiff when it aired the CNN Interview or when it published the CNN Article.  On the contrary, the two CNN publications reported on a matter of national importance—whether Russia was attempting to interfere with the 2020 presidential election—and none of the statements at issue named or even alluded to Plaintiff.  And because Plaintiff fails to state a defamation claim, his claims for civil conspiracy and aiding and abetting that tort also fail.

## I.   DELAWARE COURTS REGULARLY DISPOSE OF DEFAMATION CLAIMS ON DISMISSAL MOTIONS

Pursuant to Superior Court Rule 12(b)(6), this Court may grant a motion to dismiss for failure to state a claim if a complaint fails to assert sufficient facts that,

if proven, would entitle the plaintiff to relief, *i.e.* if it fails to plead its claim with "reasonable conceivability." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings. LLC*, 27 A.3d 531, 537 n.13 (Del. 2011). The court need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party." *Price v. E.I. duPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011), *rev'd on other grounds, Ramsey v. Ga. South. Univ. Advanced Dev. Ctr.,* 189 A.3d 1255 (Del. 2018). Nor is it "required to accept every strained interpretation of the allegations proposed by the plaintiff." *Page v. Oath Inc.*, 270 A.3d 833, 842 (Del. 2022).

Delaware courts regularly dispose of defamation claims on motions to dismiss.[6] Indeed, "[e]arly dismissal of defamation lawsuits for failure of the complaint to state a claim on which relief can be granted 'not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively

---

[6] *See, e.g.*, *Page*, 270 A.3d at 851 (affirming dismissal of defamation complaint based on fair report privilege, failure to plead actual malice, and substantial truth); *ShotSpotter*, 2022 WL 2373418, at *1 (dismissing defamation complaint based on fair report privilege, failure to plead actionable statements, and failure to plead actual malice); *Orthopaedic Assocs. of S. Delaware, P.A. v. Pfaff*, 2018 WL 822020, at *6 (Del. Super. Ct. Feb. 9, 2018) (dismissing defamation counterclaim for failure to plead defamatory statements concerning counterclaim plaintiff); *Owens v. Lead Stories*, *LLC*, 2021 WL 3076686 at *9 (Del. Super. Ct. July 20, 2021) (dismissing defamation complaint for failure to allege falsity), *aff'd*, 273 A. 3d 275 (Del. 2022).

expensive.'" *ShotSpotter*, 2022 WL 2373418, at *6 (quoting *Owens*, 2021 WL 3076686, at *9). Dismissal is appropriate here because Plaintiff cannot make out the elements of his claims.

## II.   PLAINTIFF FAILS TO STATE ANY DEFAMATION CLAIM AGAINST CNN

Under Delaware law, Plaintiff must plead and prove that: "1) [CNN] made a defamatory statement; 2) concerning the plaintiff; 3) the statement was published; and 4) a third party would understand the character of the communication as defamatory." *Page*, 270 A.3d at 842. Because CNN is a media defendant, Plaintiff must also plead and prove that any statements at issue are false. *Id.* at 843 (citing *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986)). And because Plaintiff is a limited-purpose public figure, he must plead and prove that CNN published each statement at issue with actual malice. *Id.* at 844.

Plaintiff's defamation claim must be dismissed as a matter of law on three independent grounds.

### A.   Plaintiff Does Not Identify Any Statements "Concerning" Him

First, Plaintiff's defamation claim fails because the allegedly defamatory statements in both the CNN Interview and the CNN Article are not about—or "concerning"—the Plaintiff. In order to prevail, Plaintiff is required to "show that the allegedly defamatory statement concerns [him]." *Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005). *See also Helicopter Helmet, LLC v. Gentex Corp.*, 2018 WL

2023489, at *4 (D. Del. May 1, 2018) (dismissing defamation claims where publications at issue did not "mention any Plaintiff either directly or obliquely"), *aff'd*, 774 F. App'x 96 (3d Cir. 2019).   While an allegedly defamatory statement need not "specifically refer to [the plaintiff]," the Court must be able to "reasonably infer from its contents" that the statement is in fact about the plaintiff.   *Williams v. Howe*, 2004 WL 2828058, at *4 (Del. Super. Ct. May 3, 2004) (rejecting defamation claim based on a statement that did not name or refer to plaintiff).   This requirement is a constitutional one, *New York Times Co. v. Sullivan*, 376 U.S. 254, 288 (1964) (noting that the evidence in that case was "constitutionally defective" because "it was incapable of supporting the jury's finding that the allegedly libelous statements were made 'of and concerning' respondent"), and it "stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and to have injured them."   *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 399-400 (2d Cir. 2006) (Sack, J.).

Here, Plaintiff cannot establish that the allegedly defamatory statements were "concerning" him.   The CNN Interview does not mention Plaintiff's name, his business, or his role in extracting data from the laptop.   In fact, it does not mention the laptop at all.   Instead, Blitzer and Rep. Schiff discuss **Rudy Giuliani** as the potential link to Russian disinformation efforts.   There is simply nothing in the CNN Interview that would provide a reasonable basis to infer that it is about the Plaintiff.

Plaintiff's theory appears to be that any discussion whatsoever of the FBI investigation into potential connections between the Hunter/Ukraine emails and Russia is necessarily about him because he is "synonymous with Hunter Biden's laptop," and therefore any reporting on this topic implies that Plaintiff "committed treason" by participating in a Russian disinformation plot.  FAC ¶¶ 81, 118.  This is not the first time Plaintiff has tested out this theory, without success.  Before bringing this suit, Plaintiff sued Twitter in Florida on a nearly identical basis—claiming that Twitter's blocking of the New York Post article under its "hacked materials" policy defamed Plaintiff by depicting *him* as having engaged in "hacking."  *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258 (S.D. Fla. 2021).  The court dismissed Plaintiff's claim, holding that Twitter's explanations of its decisions to block links and suspend the New York Post's Twitter account did not defame Plaintiff because they did not mention him or his business, or contain "any other descriptive information that made Plaintiff's identity readily ascertainable."  *Id.* at 1260.[7]  The same result is warranted here.  Plaintiff's "strained interpretations" of an interview that is not about him and does not mention him cannot support a claim for defamation.  *Page*, 270 A.3d at 842.

---

[7] The Florida federal court also awarded Twitter attorney's fees and costs under Florida's anti-SLAPP statute because Plaintiff's defamation claim was "without merit" and targeted First Amendment activity.  *Id.* at 1261-62.

Plaintiff's claim regarding the CNN Article fares no better.  The article states, in relevant part:

> CNN reported Friday that the FBI is investigating whether the recently published emails that purport to detail the business dealings of Joe Biden's son in Ukraine and China are connected to an ongoing Russian disinformation effort targeting the former vice president's campaign.

> A computer repair store owner in Delaware claims that someone he believes was Hunter Biden dropped off a laptop last year and that in recent months he provided data purported to belong to Hunter Biden to Rudy Giuliani, Trump's personal attorney.  The owner has said the FBI seized the laptop in December.  None of the material published so far appears to show wrongdoing by the former vice president.  Biden has said he had nothing to do with his son's private business ventures.

> **[FBI assistant director] Tyson suggested that the review was continuing.**

> "If actionable intelligence is developed, the FBI in consultation with the Intelligence Community will evaluate the need to provide defensive briefings to you and the Committee pursuant to the established notification framework," she said.

Schary Decl. Ex. 7 (emphasis added).  The only statement alleged to be defamatory is the one in bold above ("Tyson suggested that the [FBI] review was continuing.").  FAC ¶¶ 106-107.

Plaintiff does not explain how this statement concerns him at all, let alone how it is false or defamatory of him.  The statement is about the investigation, not a person.  And it simply characterizes the paragraph immediately following, which is a verbatim quote from Tyson's letter promising to consider future briefings "[i]f actionable intelligence is developed."  In sum, because the statements in suit "d[o]

not say anything at all about the [Plaintiff]," they "d[o] not defame [him.]" *Orthopaedic Assocs. of S. Del., P.A.*, 2018 WL 822020, at *5.  This Court need look no further to dismiss this action.

### B.     The Statements are Protected by the Fair Report Privilege

Second, this Court can grant the motion to dismiss for the independent reason that the CNN publications are protected by the Delaware fair report privilege, which shields the media from liability for "publishing an accurate and fair account of a judicial proceeding or the governmental acts of executive officials of government." *Russell v. Delaware Online*, 2016 WL 3437597, at *4 (D. Del. June 20, 2016) (citing *Read v. News-Journal Co.*, 474 A.2d 119, 120 (Del. 1984)).  The purpose of the privilege is to serve "the interest of the public in having information made available to it of what occurs in such proceedings."  *Read*, 474 A.2d at 120.

Here, the privilege applies to both publications.  First, as to the CNN Interview, this segment is precisely the type of report that the fair report privilege seeks to protect: an interview with the Chairman of the House Intelligence Committee about investigations by the FBI and intelligence communities.  *See Page v. Oath*, 2021 WL 528472, at *4 (Del. Super. Ct. Feb. 11, 2021) (article reporting on investigations by U.S. intelligence officials protected by fair report privilege); *see also Gubarev v. BuzzFeed, Inc.*, 340 F. Supp. 3d 1304, 1316-17 (S.D. Fla. 2018) (fair report privilege protected publication of reports that were the subject of FBI

investigation).  And the telecast was certainly fair and accurate, as it was a live interview with Rep. Schiff.

Next, the CNN Article is also protected by the fair report privilege.  *See, e.g.*, *Short v. News-Journal Co.*, 212 A.2d 718, 721-22 (Del. 1965) (article summarizing press release by IRS director was protected by fair report privilege); *Russell*, 2016 WL 3437597, at *4 (articles "based on" and "fairly summariz[ing]" press release by local police department were protected by fair report privilege).  There is no question the FBI investigation was a government proceeding and there can be no reasonable dispute that the CNN Article correctly summarizes it.  The CNN Article summarizes and quotes from an official letter from the FBI assistant director for congressional affairs to Sen. Ron Johnson.  It accurately states that the FBI had "nothing to add at this time" to DNI Ratcliffe's public comments; that the FBI would brief the House intelligence committee "[i]f actionable intelligence is developed" in the future; and that the FBI could not "confirm or deny" the existence of any investigation. Accordingly, the CNN Article is squarely protected by the fair report privilege.

Because CNN's interview with Rep. Schiff about his work on the House Intelligence Committee and CNN's digital article about an official FBI letter to Congress are both protected by the fair report privilege, Plaintiff cannot state any claim for defamation against CNN.

17

### C.   Plaintiff Fails to Plead that CNN Acted with Actual Malice

Finally, Plaintiff's defamation claims against CNN must also be dismissed because Plaintiff is a public figure who does not—and cannot—allege that CNN acted with actual malice in publishing the CNN Interview or the CNN Article.

A public figure may not recover damages for defamation unless he "proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 279-80. "Reckless" in this context means that the plaintiff must "demonstrate with clear and convincing evidence that the defendant realized that [its] statement was false or that [it] *subjectively* entertained serious doubts as to the truth of his statement." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 n.30 (1984) (emphasis added). This high burden is necessary to guarantee the First Amendment's core principles and enshrines a "national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open[.]" *Sullivan*, 376 U.S. at 270.

Applying these principles, Delaware courts routinely grant motions to dismiss defamation claims for failure to plead actual malice. *See, e.g., Page*, 270 A.2d at 846-51; *Owens,* 2021 WL 3076686, at *12-15; *ShotSpotter*, 2022 WL 2373418, at *12-14.

### 1.   Plaintiff is a Limited-Purpose Public Figure Who Must Plead and Prove Actual Malice

As a threshold matter, Plaintiff appears to concede that the actual malice standard applies to his claims against CNN.  Although he alleges elsewhere in the FAC that he is a "private citizen" (FAC ¶ 12), he alleges only that CNN acted with "actual malice," not that it was "negligent."[8]

And in any event, the allegations in the FAC make clear that Plaintiff is a limited-purpose public figure in this case.  A limited-purpose public figure is someone who may not be "well known throughout the country or on every issue," but is "nonetheless sufficiently involved in one particular arena to qualify as [a] public figure[] for that purpose." *Schiavone Const. Co. v. Time, Inc.*, 847 F.2d 1069, 1077 (3d Cir. 1988).  To be considered a limited-purpose public figure, a plaintiff must "voluntarily inject[] himself or [be] drawn into a particular public controversy." *Marcone v. Penthouse Int'l Mag. For Men*, 754 F.2d 1072, 1082 (3d Cir. 1985) (citations omitted).  The "public controversy" must be "a real dispute, the outcome of which affects the general public or some segment of it." *Id.* at 1083.

---

[8] Even under a negligence standard, Plaintiff's claims would still fail because he does not and cannot allege that CNN departed from the "care or caution or attention which 'a reasonable reporter and newspaper would use under similar circumstances.'" *Re v. Gannett Co.*, 480 A.2d 662, 666 (Del. Super. Ct. 1984), *aff'd*, 496 A.2d 553 (Del. 1985).  Airing a live interview with a U.S. Congressman and chair of the House Intelligence Committee about an ongoing FBI investigation into potential foreign interference in U.S. elections and reporting on an official FBI communication about that investigation would not satisfy any conceivable definition of negligence.

There can be no question that the discussion of Hunter's emails, which generated widespread media coverage and an FBI investigation, plainly qualify as a public controversy. Indeed, they were part of a broader pre-existing controversy over Hunter's business dealings in Ukraine, which played a role in President Trump's first impeachment proceeding. And Plaintiff's allegations demonstrate that he "voluntarily injected" himself into those controversies. Plaintiff gave interviews to reporters from numerous publications—including CNN—about the laptop and the New York Post article prior to the CNN publications at issue. *See, e.g.*, FAC ¶¶ 41, 104, 112. Through his counsel, Plaintiff also pitched an op-ed to multiple news outlets that underscored the deliberate choices he made to "thrust" himself into this controversy, FAC ¶¶ 42, 48 & n.3; *id.* Ex. D, once he realized the information he had provided was not referenced in President Trump's impeachment trial. FAC Ex. D, at 2. And he reached out to "several members of Congress," including Sen. Ron Johnson, about the copy still in his possession because he was "frustrat[ed]" that his initial efforts did not spur any response. Plaintiff also provided the laptop to Giuliani, hoping that Giuliani would "provide the information directly to [President Trump]." *Id.*

By actively shopping the laptop information to numerous members of Congress and political figures, speaking with reporters on the record after the emails were released, and preparing his own op-ed to shape the narrative, Plaintiff

"voluntarily thrust himself into the vortex" of this major national story. *Marcone*, 754 F.2d at 1083. Courts routinely hold that similar courses of conduct qualify plaintiffs as limited-purpose public figure. *See, e.g., Page*, 2021 WL 528472, at *4 (finding plaintiff, a member of Donald Trump's 2016 campaign foreign policy team, to be a limited-purpose public figure where he gave a press interview about his ties to Russia and thereby "injected himself" into public controversy over Trump campaign's potential connections to Russia); *Schiavone Const. Co.*, 847 F.2d at 1078 (finding plaintiffs to be limited-purpose public figures where they "obtained unusual exposure to the media"); *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 706, 710 (4th Cir. 1991) (finding "self-styled whistleblower" who wrote letters to government agencies "in an attempt to influence the outcome" of a particular controversy to be a limited-purpose public figure); *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1168 (E.D.N.Y. 2003) (finding plaintiff to be a limited-purpose public figure where he conducted interviews with several reporters "in order to present 'his side of the story'"); *Gilmore v. Jones*, 370 F. Supp. 3d 630, 668 (W.D. Va. 2019) (plaintiff who claimed to be defamed by characterization as a "deep state operative" was a limited-purpose public figure where he gave several interviews and wrote an editorial about the controversy at issue).

Indeed, Plaintiff *concedes* his limited-purpose public figure status when he alleges that his name was "synonymous with Hunter Biden's laptop" at the time of

the CNN Interview.  FAC ¶ 81.  While this allegation does not satisfy the legal requirement that the statements at issue must be "concerning" him, it does function as an admission by Plaintiff that he had sufficient prominence to qualify as a limited-purpose public figure in this case.

The Third Circuit's decision in *McDowell v. Paiewonsky*, 769 F.2d 942 (3d Cir. 1985) is directly on point.  There, the plaintiff—an architect who worked on major public building projects—portrayed himself as a "virtually unknown architect" in an attempt to claim private-figure status.  But at the same time, he also argued that one of the allegedly defamatory publications—a speech about a particular building project that "never mentioned [him] by name"—must be considered "of and concerning" him because his name was "married in the public's mind" to the project.  *Id.* at 949.  The court found the plaintiff's contradictory assertions to be "disingenuous."  Having asserted for litigation purposes that his name was widely known, the court reasoned, he could not pretend otherwise in the context of assessing public-figure status.  *Id.*  Rather, "[w]hen an individual undertakes a course of conduct that invites attention, even though such attention is neither sought nor desired, he may be deemed a public figure."  *Id.  See also, e.g., Marcone,* 754 F.2d at (3rd Cir. 1985) (plaintiff's "voluntary connection" with widely publicized motorcycle gangs and the "intense media attention he engendered" rendered him a limited public figure); *Rosanova v. Playboy Enterprises, Inc.,* 580

F.2d 859, 861 (5th Cir.1978) (plaintiff was a limited public figure where he "voluntarily engaged in a course [of conduct] that was bound to invite attention and comment"). While Plaintiff may now claim that he did not desire public attention, he clearly invited it by reaching out to multiple members of Congress and Giuliani about the laptop, and in speaking with numerous media outlets on the record. Plaintiff is a limited-purpose public figure in this case.

### 2.    The FAC Fails to Plead Actual Malice

As a limited-purpose public figure, Plaintiff must plead (and ultimately prove) that CNN published the statements at issue with actual malice. *See Page*, 2021 WL 528472, at *4. It is not enough for Plaintiff simply to recite the legal standard; he "must plead facts that permit that conclusion [of actual malice]." *Id.* at *5. "[C]onclusory" allegations of actual malice with "no factual support" are insufficient to withstand a motion to dismiss. *O'Gara v. Coleman,* 2020 WL 752070, at *11-12 (Del. Ch. Ct. Feb. 14, 2020). Plaintiff fails to meet this high standard.

*First*, the U.S. Supreme Court has held that where the defendant in a defamation action is a publishing organization, the showing of actual malice "must be 'brought home' to the person or persons in the 'organization having responsibility for the publication.'" *Page*, 270 A.3d at 844 (quoting *Sullivan*, 376 U.S. at 287). That means that "[w]hen there are multiple actors involved in an organizational defendant's publication of a defamatory statement, the plaintiff must identify the

23

individual responsible for publication of a statement, and it is that individual the plaintiff must prove acted with actual malice." *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013).  Here, as to both the CNN Interview and the CNN Article, Plaintiff fails to identify any specific individual at CNN with the relevant knowledge or awareness of falsity for each allegedly defamatory statement.  He pleads only general allegations about what CNN knew or did not know.  This alone is a basis to dismiss the FAC for failure to plead actual malice.

*Second,* the FAC does not allege that CNN knew the information published was false.  To plausibly allege malice, Plaintiff must plead facts that plausibly allege that a jury could find by clear and convincing evidence that "the defendant *in fact entertained serious doubts* as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (emphasis added).  The FAC lacks such allegations.

At the most basic level, Plaintiff cannot show actual malice as to any statements about him because there are no statements about him at issue in this case. *See supra* § II.A.  Nor can Plaintiff show that CNN acted with actual malice with respect to statements about the investigation more generally.  As to the CNN Interview, Plaintiff does not and cannot plead that at the time of the Publication anyone at CNN in fact knew the specific emails released by the *Post* were *not* related to any Russian disinformation operation.  There is not, for example, an allegation that CNN had its own copy of the laptop or the data in Giuliani's possession to

24

confirm its authenticity or rule out any connection to Russia.  On the contrary, Plaintiff himself did not even know at the time whether the published emails came from the laptop he had repaired.  Plaintiff's op-ed stated that Plaintiff "cannot confirm that the full extent of what was released by Rudy Giuliani was, in fact, on the laptop" and "do[es] not know if all emails released by the New York Post were actually on the hard drive."  FAC Ex. D at 3-4.  Plaintiff could not even confirm that the laptop was dropped off at his shop by the real Hunter, only "a man claiming to be Hunter Biden." *Id.* at 2. If Plaintiff could not confirm the authenticity of those specific emails at the time, he cannot allege CNN *knew* they had no connection to Russia.

Similarly, as to the CNN Article, Plaintiff has not alleged that CNN knew the FBI investigation was not "continuing."  And he will not be able to do so: if the FBI would not officially confirm or deny the existence of any investigation, then CNN could not know the investigation was *not* "continuing."[9]  Plaintiff simply has not pleaded facts sufficient to claim that CNN acted with actual malice in publishing the CNN Interview or the CNN Article.

*Third*, Plaintiff cannot meet the even stricter requirements to plead actual malice under a theory of defamation by implication.  To plead defamation by

---

[9] As the U.S. Supreme Court has held, adopting "one of a number of possible rational interpretations" of an ambiguous document or event cannot support actual malice. *Time Inc. v. Pape*, 401 U.S. 279, 289-90 (1971).

implication, Plaintiff must plausibly allege not only that the implication existed, but also that CNN "intend[ed] or endors[ed]" that implication. *Abraham v. Post*, 2012 WL 5509619, at *2 (Del. Super. Ct. Sept. 26, 2012) (citing *Chapin v. Knight–Ridder, Inc.,* 993 F.2d 1087, 1092 (4th Cir.1993)). *See also ShotSpotter*, 2022 WL 2373418, at *14 (to plead defamation by implication, plaintiff must "show something that establishes defendants' intent to communicate the defamatory meaning") (quoting *Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 90 (3d Cir. 2013)). This heightened burden stems from First Amendment protections; without it, publishers could be liable "not only for what was *not* said but also for what was *not intended* to be said." *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 681 (9th Cir. 1990) (emphasis added). "A publisher reporting on matters of . . . public interest cannot be charged with the intolerable burden of guessing what inferences a jury might draw from an article and ruling out all possible false and defamatory innuendoes that could be drawn from the article." *Woods v. Evansville Press Co., Inc.*, 791 F.2d 480, 487-88 (7th Cir. 1986) (rejecting defamation by implication claim where "there is no evidence that the defendants . . . shared the plaintiff's interpretation of the [publication] or intended that [it] be read to contain the defamatory innuendoes the plaintiff attributes to it"). *Id.* at 487.

Here, that means Plaintiff must plead not only that the CNN publications defamed him by accusing him of "treason" for "knowingly participat[ing] in a

26

Russian scheme" to interfere with U.S. elections (*see* FAC ¶ 116, 118), but also that CNN intended to convey that implication.

But he has not done so.  As to the CNN Interview, Plaintiff does not (and cannot) allege that Blitzer or anyone else at CNN intended to accuse him personally of treason in an interview where he was never mentioned.  And as to the CNN Article, he does not identify any basis to show CNN intended to imply that "U.S. intelligence officials actually believed Russia was involved in the release of information from Hunter Biden's laptop" (*see* FAC ¶ 108), given that the article stated only that Tyson "suggested the review was continuing" and noted that the FBI would not confirm or deny the existence of any investigation.

*Finally*, Plaintiff's conclusory allegations "on information and belief" about CNN's political motive—*i.e.*, that CNN "supported" Joe Biden and "opposed" President Trump in the 2020 elections (*see* FAC ¶ 100)—"cannot provide a sufficient basis for finding actual malice."  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989).  *See also Page*, 2021 WL 528472 at *5 ("political opposition alone does not constitute actual malice"); *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) ("[T]he motivations behind defendants' communications—inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law.").  Because Plaintiff fails to plead actual malice, he cannot state any claim for defamation against CNN.

## III.   PLAINTIFF'S REMAINING CLAIMS FAIL AS WELL

Plaintiff's remaining claims against CNN for civil conspiracy to defame (Count 6) and for aiding and abetting a defamation (Count 8) fail along with his defamation claim.  Neither of these claims are independent causes of action; rather, there must be some underlying tortious conduct.  *See Cousins v. Goodier*, 2021 WL 3355471, at *7 (Del. Super. Ct. July 30, 2021), *aff'd*, 283 A.3d 1140 (Del. 2022). For these claims to survive the motion to dismiss, Plaintiff must state a claim for defamation—which he has not done.  Because the statements in suit "are not actionable as defamation, they are not actionable as . . . conspiracy, or aiding and abetting." *Id*.

### CONCLUSION

For the foregoing reasons, the First Amended Complaint should be dismissed with prejudice pursuant to Del. R. 12(b)(6).

**MORRIS JAMES LLP**

*/s/ David J. Soldo*
David J. Soldo (#4309)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801-1494
(302)888-6950
dsoldo@morrisjames.com

Alison Schary (*pro hac vice*)
Davis Wright Tremaine LLP
1301 K St NW, Suite 500 East
Washington, DC 20005
(202) 973-4200
alisonschary@dwt.com

Hilary Oran (*pro hac vice*)
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
(212) 489-8230
hilaryoran@dwt.com

*Attorneys for Defendant Cable News
Network, Inc.*

Dated:  January 30, 2023