**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

JOHN PAUL MAC ISAAC,

        Plaintiff/Counterclaim
        Defendant,

    v.

CABLE NEWS NETWORK, INC.,
ADAM BENNETT SCHIFF,
POLITICO LLC,
ROBERT HUNTER BIDEN, AND
BFPCC, INC.,

        Defendants/Counterclaim
        Plaintiff Biden.

C.A. No.: 1:23-cv-00247-MN

Hon. Maryellen Noreika

DEMAND FOR JURY TRIAL OF 12

**DEFENDANT/COUNTERCLAIM PLAINTIFF ROBERT HUNTER BIDEN'S
ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant/Counterclaim Plaintiff Robert Hunter Biden ("Mr. Biden" or "Defendant" or "Counterclaim Plaintiff"), by and through his undersigned counsel, herein files his Answer, Affirmative Defenses and Counterclaims to the First Amended Complaint, filed by Plaintiff/Counterclaim Defendant John Paul Mac Isaac ("Plaintiff" or "Counterclaim Defendant") on January 20, 2023 (the "Complaint") (DE 3, Ex. 52). All responses, affirmative defenses and counterclaims herein are based on information known to Mr. Biden as of the date hereof, and Mr. Biden reserves the right to supplement or amend his responses or assert any other defenses based on new information revealed through discovery or other means as may be appropriate.

With regard to the specific allegations in the Complaint, Mr. Biden responds as follows:

## ANSWER

1.      Paragraph 1 makes assertions for which an answer is not required.  To the extent paragraph 1 contains a statement of causes of action or damages, Mr. Biden denies the allegations.

2.      Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 2.

3.      Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 3.

4.      Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 4.

5.      Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 5.

6.      Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 6.

7.      Mr. Biden admits that he is currently a California resident, denies that he transacts significant business in the State of Delaware, and admits that he has significant ties to the State of Delaware.

8.      With respect to any other Defendant, Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 8.  With respect to himself, Mr. Biden admits that there is personal jurisdiction over him in Delaware.

9.      Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 9.

10.     Admitted.

11.     Mr. Biden incorporates all his responses contained in paragraphs 1 – 11 [sic].

12.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 12 as to Plaintiff's current residence.

13.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 13.

14.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 14.

15.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 15.

16.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 16.

17.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 17.

18.     Denied.

19.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 19.

20.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 20.

21.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 21.

22.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 22.

23.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 23.

24.     Mr. Biden admits that he did not pay any invoice to a place called the Mac Shop and is without knowledge sufficient to admit or deny the remaining allegations in paragraph 24.

25.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 25.  Mr. Biden is aware of Sections 4001 and 4003 of Title 25 of the Delaware Code (*Definition of abandoned personal property* and *Procedure to obtain title*, respectively), which indicate when personal property in the State of Delaware can be deemed to be abandoned (one year) and the procedures a person must comply with to obtain title to abandoned personal property. Plaintiff does not allege that he complied with the provisions of Section 4003 of Title 25.

26.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 26.

27.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 27.

28.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 28.

29.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 29.

30.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 30.

31.     Mr. Biden admits that Mr. George Mesires was his attorney.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 31.

32.     Mr. Biden admits that on October 14, 2020, the *New York Post* published an article in which he and others, including Rudy Giuliani, Robert Costello, Steve Bannon, Devon Archer, and George Mesires, were mentioned.

33.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 33.

34.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 34.

35.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 35.

36.     Mr. Biden denies that Plaintiff "was not involved" in the disclosure of data to the *New York Post*, denies that Plaintiff "did not promote" the disclosure, and is without knowledge sufficient to admit or deny whether Plaintiff authorized the disclosure.

37.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 37.

38.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 38.

39.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 39.

40.     Mr. Biden admits that the *New York Post* article contained a photo of a repair authorization form.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 40.

41.     Mr. Biden admits that on October 14, 2020, other media outlets wrote articles about him.  Mr. Biden is otherwise without knowledge sufficient to admit or deny the allegations in paragraph 41.

42.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 42.

43.     Mr. Biden admits that on October 19, 2020, a "Public Statement on the Hunter Biden Emails," signed by a number of former intelligence officials, was released and contained certain statements concerning "a Russian information operation" and "evidence of Russian involvement."   Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 43.

44.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 44.

45.     Mr. Biden admits that on October 19, 2020, Director of National Intelligence John Ratcliffe appeared on Fox Business with Maria Bartiromo and made certain public statements.

46.     Mr. Biden admits that on October 20, 2020, Ms. Jill C. Tyson, Assistant Director of the FBI's Office of Congressional Affairs, sent a letter to Senator Ron Johnson, Chairman of the Senate Committee on Homeland Security and Governmental Affairs, making certain public statements.

47.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 47.

48.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 48.

49.     Mr. Biden denies that any *Politico* story confirmed the validity of the *New York Post* exposé.

50.     Mr. Biden denies that any *New York Times* story confirmed the validity of the *New York Post* exposé.

51.     Mr. Biden denies that any *Washington Post* story confirmed the validity of the *New York Post* exposé.

52.     Mr. Biden incorporates all his responses contained in paragraphs 1 – 52 [sic].

53.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 53.

54.     Mr. Biden is without information sufficient to admit that Plaintiff possessed any particular laptop and is without knowledge sufficient to admit or deny the remaining allegations in paragraph 54.

55.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 55.

56.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 56.

57.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 57.

58.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 58.

59.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 59.

60.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 60.

61.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 61.

62.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 62.

63.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 63.

64.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 64.

65.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 65.

66.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 66.

67.     Denied.

68.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 68.

69.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 69.

70.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 70.

71.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 71.

72.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 72.

73.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 73.

74.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 74.

75.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 75.

76.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 76.

77.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 77.

78.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 78.

79.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 79.

80.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 80.

81.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 81.

82.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 82.

83.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 83.

84.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 84.

85.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 85.

86.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 86.

87.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 87.

88.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 88.

89.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 89.

90.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 90.

91.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 91.

92.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 92.

93.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 93.

94.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 94.

95.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 95.

96.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 96.

97.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 97.

98.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 98.

**<u>Prayer for Relief:</u>** No response from Mr. Biden is required.

99.     Mr. Biden incorporates all his responses contained in paragraphs 1 – 99 [sic].

100.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 100.

101.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 101.

102.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 102.

103.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 103.

104.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 104.

105.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 105.

106.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 106.

107.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 107.

108.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 108.

109.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 109.

110.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 110.

111.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 111.

112.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 112.

113.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 113.

114.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 114.

115.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 115.

116.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 116.

117.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 117.

118.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 118.

119.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 119.

120.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 120.

121.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 121.

122.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 122.

123.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 123.

124.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 124.

125.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 125.

**Prayer for Relief:** No response from Mr. Biden is required.

126.    Mr. Biden incorporates all his responses contained in paragraphs 1 – 126 (not just paragraphs 1 – 52, as stated in the Complaint).

127.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 127.

128.    Mr. Biden admits that on October 19, 2020, *Politico* published an article, "*Hunter Biden story is Russian disinfo, dozens of former intel officials say.*"

129.     Mr. Biden admits that the October 19, 2020 *Politico* article discussed the "Public Statement on the Hunter Biden Emails" signed by former intelligence officials, and he is otherwise without knowledge sufficient to admit or deny the allegations in paragraph 129.

130.     Mr. Biden avers that the headline of the October 19, 2020 article referred to in paragraph 130 speaks for itself and no further response is required.

131.     Mr. Biden admits that the October 19, 2020 *Politico* article referenced a Mac shop owner in Delaware.

132.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 132.

133.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 133.

134.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 134.

135.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 135.

136.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 136.

137.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 137.

138.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 138.

139.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 139.

140.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 140.

141.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 141.

142.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 142.

143.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 143.

144.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 144.

145.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 145.

146.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 146.

147.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 147.

148.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 148.

149.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 149.

**Prayer for Relief:** No response from Mr. Biden is required.

150.     Mr. Biden incorporates all his responses contained in paragraphs 1 – 150 (not just paragraphs 1 – 52, as stated in the Complaint).

151. Mr. Biden admits that BFPCC stands for "Biden for President Campaign Committee" and that it was a campaign organization formed for the Presidential campaign of candidate Joseph R. Biden, Jr., and he is without knowledge sufficient to admit or deny the remaining allegations in paragraph 151.

152. Admitted.

153. Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 153.

154. Mr. Biden admits that Symone D. Sanders appeared in an interview on MSNBC's "All In with Chris Hayes" and made certain public statements. Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 154.

155. Mr. Biden admits that Biden Deputy Campaign Manager Kate Bedingfield held a call with reporters and made certain public statements. Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 155.

156. Mr. Biden admits that candidate Joseph R. Biden, Jr. made a campaign statement referring to national intelligence officials. Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 156.

157. Mr. Biden admits that Joseph R. Biden, Jr. appeared in a campaign interview and made certain public statements. Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 157.

158. Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 158.

159. Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 159.

160.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 160.

161.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 161.

162.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 162.

163.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 163.

164.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 164.

165.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 165.

**Prayer for Relief:** No response from Mr. Biden is required.

166.    Mr. Biden incorporates all his responses contained in paragraphs 1 – 166 (not just paragraphs 1 – 52, as stated in the Complaint).

167.    Admitted.

168.    Admitted.

169.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 169.

170.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 170.

171.    Mr. Biden admits that, if he ever had visited before, he did not return to Plaintiff's shop.

172.     Admitted and Mr. Biden further answers that the statement makes no mention of or even a reference to Plaintiff.

173.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 173.

174.     Mr. Biden admits that Mr. Mesires was his attorney.   Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 174.

175.     Denied.

176.     Denied.

177.     Denied.

178.     Denied.

179.     Denied.

180.     Denied.

181.     Denied.

182.     Denied.

**Prayer for Relief:** Mr. Biden denies that Plaintiff has made out a cause of action against him or has any valid claim for damages from him.

183.     Mr. Biden incorporates all his responses contained in paragraphs 1 – 183 [sic].

184.     Mr. Biden admits that he supported his father's candidacy for President of the United States in the 2020 election and is without knowledge sufficient to admit or deny the remaining allegations in paragraph 184 as to any other Defendant.

185.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 185.

186.    Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 186 as to any other Defendant.

187.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 187.

188.    Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 188 as to any other Defendant.

189.    Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 189 as to any other Defendant.

190.    Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 190 as to any other Defendant.

191.    Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 191 as to any other Defendant.

192.    Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 192 as to any other Defendant.

193.    Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 193 as to any other Defendant.

194.    Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 194 as to any other Defendant.

195.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 195.

**Prayer for Relief:** Mr. Biden denies that Plaintiff has made out a cause of action against him or has any valid claim for damages from him.

196.     Mr. Biden incorporates all his responses contained in paragraphs 1 – 196 (not just paragraphs 1 – 183, as stated in the Complaint).

197.     Mr. Biden admits that he supported his father's candidacy for President of the United States in the 2020 election, and is without knowledge sufficient to admit or deny the remaining allegations in paragraph 197 as to any other Defendant.

198.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 198.

199.     Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 199 as to any other Defendant.

200.     Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 200.

201.     Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 201 as to any other Defendant.

202.     Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 202 as to any other Defendant.

203.     Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 203 as to any other Defendant.

204.     Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 204 as to any other Defendant.

205.     Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 205 as to any other Defendant.

206.     Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 206 as to any other Defendant.

207.    Denied as to Mr. Biden.  Mr. Biden is without knowledge sufficient to admit or deny the remaining allegations in paragraph 207 as to any other Defendant.

208.    Mr. Biden is without knowledge sufficient to admit or deny the allegations in paragraph 208.

**Prayer for Relief:** Mr. Biden denies that Plaintiff has made out a cause of action against him or has any valid claim for damages from him.

**Demand for Jury Trial:** Mr. Biden also seeks a trial by jury by 12.

## AFFIRMATIVE DEFENSES

1.    Plaintiff's Complaint fails to state a claim against Mr. Biden upon which relief may be granted.  Among other reasons, the statements the Complaint alleges to be made by Mr. Biden do not mention Plaintiff or refer to him in any fashion, and do not amount to statements recognized as defamation, and the Complaint has not made out proper claims for conspiracy or aiding and abetting by Mr. Biden.

2.    Any actions alleged to have been taken by Mr. Biden did not cause Plaintiff any damages upon which relief may be granted.

3.    Plaintiff's claims are barred due to prior breach by Plaintiff.  Among other reasons, Plaintiff has not established that he took all necessary steps to "secure the data" as required by the Repair Authorization agreement that he claims gave him the right to access the data in his possession in the first place.

WHEREFORE, Defendant/Counterclaim Plaintiff Robert Hunter Biden respectfully requests (a) judgment in his favor dismissing each of Plaintiff's causes of action alleged in the Complaint against him; (b) reimbursement of all his legal expenses, including attorneys' fees,

incurred by him in connection with this action; and (c) whatever other relief the Court deems just and equitable.

## COUNTERCLAIMS

## INTRODUCTION

By and through his undersigned counsel, Defendant/Counterclaim Plaintiff Robert Hunter Biden ("Mr. Biden") brings the following counterclaims against Plaintiff/Counterclaim Defendant John Paul Mac Isaac.  In support thereof, Mr. Biden states upon direct knowledge as to his own actions and upon information and belief as to the conduct of others involved, as follows:

## PARTIES

1.     Defendant and Counterclaim Plaintiff Robert Hunter Biden is a resident of California, and has significant ties to the State of Delaware.

2.     Plaintiff and Counterclaim Defendant John Paul Mac Isaac is an individual over the age of 18 who is *sui juris* and resides in Wilmington, Delaware. (Compl. ¶ 2).

## JURISDICTION AND VENUE

3.     Plaintiff and Counterclaim Defendant John Paul Mac Isaac consented to jurisdiction and venue in the Superior Court of the State of Delaware by initially filing this action in that court on October 17, 2022. (Compl. ¶ 10).

4.     On March 7, 2023, the United States (which moved to substitute itself as Defendant for Representative Adam Schiff) removed this action from the Delaware Superior Court to this Court pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(2).

## FACTUAL BACKGROUND

### Possession of Electronic Data that Mac Isaac Claims to Be Hunter Biden's

5.      In or before April 2019, Counterclaim Defendant Mac Isaac, by whatever means, came into possession of certain electronically stored data, at least some of which belonged to Counterclaim Plaintiff Biden.[1]

6.      Mac Isaac claims that he obtained lawful possession of the data because it was contained on a laptop that Mr. Biden left behind at Mac Isaac's repair shop (the Mac Shop) and that a Repair Authorization form, allegedly signed by Mr. Biden, provided that "[e]quipment left with the Mac Shop after 90 days of notification of completed service will be treated as abandoned and you agree to hold the Mac Shop harmless for any damage or loss of property." (Compl. ¶ 25). Mac Isaac further claims that because Mr. Biden never returned to the repair shop to retrieve his recovered data, Mac Isaac is thereby the rightful owner to the equipment under the terms of the Repair Authorization form. (*Id.* ¶ 24).

7.      The boilerplate terms of the Repair Authorization form used by Mac Isaac were contained in small-print font at the bottom of the page, well below the signature line. (Compl. Ex. A).

8.      Contrary to Mac Isaac's Repair Authorization form, Delaware law provides that tangible personal property is deemed abandoned when "the rightful owner has left in the care or custody of another person and has failed to maintain, pay for the storage of, exercise dominion or control over, and has failed to otherwise assert or declare the ownership rights to the [] property

---

[1] This is not an admission by Mr. Biden that Mac Isaac (or others) in fact possessed any particular laptop containing electronically stored data belonging to Mr. Biden. Rather, Mr. Biden simply acknowledges that at some point, Mac Isaac obtained electronically stored data, some of which belonged to Mr. Biden.

**for a period of 1 year**." (25 Del. C. § 4001) (emphasis added).  The procedure to obtain lawful title to abandoned personal property requires the person in possession of the property to file a petition in a court of competent jurisdiction.  (25 Del. C. § 4003).  Other obligations must then also be satisfied before obtaining lawful title, such as the court sending notice to the owner and the petitioner posting notice in five or more public places, and advertising the petition in a newspaper. (25 Del. C. § 4003(b)).

9.     Even if a customer of Mac Isaac's were to sign the Repair Authorization form, such a signature would be unenforceable under Delaware law as a typical small-print adhesion clause for which there was no proper notice or opportunity to bargain or negotiate.

10.     And contrary to Mac Isaac's claim that property left in his shop is abandoned property after 90 days, he admits in his recently published book and in other media appearances that he actually began accessing what he claims he had in his possession as Mr. Biden's data long before 90 days had expired from when he claims any property or data was left in his shop (as early as April 13, 2019).  (JOHN PAUL MAC ISAAC, AMERICAN INJUSTICE: MY BATTLE TO EXPOSE THE TRUTH 15–16, 34 (Post Hill Press 2022) (e-book)).

11.     Mac Isaac readily admits that, however he came into possession of such material, his intrusion included viewing and accessing sensitive, private material.  From whatever the source, the material he then provided to others included photos of Mr. Biden using drugs, without clothes, and involved in intimate relations with other adults.  In fact, Mac Isaac admits that while reviewing the data he possessed, he accessed material that made him "uncomfortable."  (*Id.* at 46). He also admits that the data he came into possession of, and the files he directly accessed, were "none of [his] business."  (*Id.* at 15).

12.     Moreover, even if the Repair Authorization form were enforceable under Delaware law, by its own terms, it provides abandonment of only any "equipment" that is left behind at the Mac Shop, and not the *data* on or embedded within any such equipment.  In fact, the Repair Authorization form states that the Mac Shop will make every effort to "secure your data." (Compl. Ex. A).  Customers who sign Mac Isaac's Repair Authorization form do not, therefore, waive any rights under Delaware law for the data that any equipment might contain.  Reputable computer companies and repair people routinely delete personal data contained on devices that are exchanged, left behind, or abandoned.  They do not open, copy, and then provide that data to others, as Mac Isaac did here.

13.     At no time did Mr. Biden grant Mac Isaac any permission to access, review, copy, or disseminate for his own purposes any electronically stored data that ever was created or received or maintained by Mr. Biden (regardless of how Mac Isaac came into possession of such material).

<strong><u>Copying and Distribution of Personal Data by Mac Isaac</u></strong>

14.     Not content with possessing and accessing the data without permission to do so, Mac Isaac admits that he copied the data without Mr. Biden's consent, and distributed copies of the personal data (in whole or in part) to various people, also without Mr. Biden's consent.

15.     Mac Isaac has stated that he opposed Joseph R. Biden, Jr.'s candidacy for President in 2020, supported then-President Donald Trump, and that he took his actions to harm President Biden and his family and to assist then-President Trump.  (J.P. MAC ISAAC, AMERICAN INJUSTICE 37, 45, 70, 96 (e-book)).  Among the actions that Mac Isaac took was providing data in his possession to political enemies of Joseph Biden.  Mac Isaac intended and knew, or clearly should have known, that people to whom he provided the data that he believed to belong to Mr. Biden would use it against then-candidate Joseph Biden and to assist then-President Trump.

16.     Mac Isaac admits that he also worked with an individual named Yaacov Apelbaum to create a "forensic image" of the data in Mac Isaac's possession.  Apelbaum (founder and CEO of XRVision Ltd., a technology firm specializing in video analytics and facial recognition software) came to Mac Isaac's home in Delaware, reviewed the data, and assisted Mac Isaac in creating some sort of forensic copy.  (*Id.* at 83, 85–86).

17.     It is unclear exactly how many digital copies or forensic images Mac Isaac made of the data in his possession but based on the number of copies distributed by Mac Isaac, it was likely several copies.

18.     Mac Isaac admits that in July 2019, he made a "clone" of the data that he then loaded onto a MacBook of his own.  (*Id.* at 11, 24).  It is likely that Mac Isaac still possesses this unauthorized copy.

19.     Mac Isaac admits that he called his father and told him "what [he'd] initially seen" in the data.  (*Id.* at 34).  Then, in or around September 2019, Mac Isaac sent a hard drive containing the data from Wilmington, Delaware to his father, Richard Mac Isaac, in Albuquerque, New Mexico, inside a stuffed animal, which his father agreed to hold for safekeeping.  (*Id.* at 34, 36). It is likely that Mac Isaac's father Richard still possesses this unauthorized copy.

20.     That same month, Mac Isaac composed a letter to send to President Trump's attorney and supporter, Rudy Giuliani, and planned to make a flash drive from the data in his possession consisting of key documents summarizing information that he believed would help prevent President Trump's impeachment.  (*Id.* at 37–39).  It is not yet known what Mac Isaac did with those materials.

21.     In November 2019, Mac Isaac printed out materials from the data he maintained to assist then-President Trump to defend against the impeachment proceedings in the U.S. House of

Representatives.  (*Id.* at 45).  It is not yet known to whom Mac Isaac sent this unauthorized copy of data or whether Mac Isaac still possesses this unauthorized copy.

22.     Mac Isaac admits that he gave another copy of the data in his possession (either electronic or printed) to his uncle, Ronald J. Scott, Jr., who in May 2020 was sending at least summaries of the data he received from his nephew to journalists and Republican members of Congress.  (*Id.* at 55, 57, 65).  It is not yet known what materials Mac Isaac's uncle sent to whom, and it is likely Mac Isaac's uncle still possesses this unauthorized copy he received.

23.     Hoping to share Mr. Biden's data with Tucker Carlson of *Fox News*, Mac Isaac admits that he, his father, and his uncle Ron "all agreed to have [his] uncle reach out and share with Ken [LaCorte] some of the files and the basic timeline of events."  (*Id.* at 70).  Mr. LaCorte was a former *Fox News* executive and a friend of Mac Isaac's uncle.  It is not yet known what data Mac Isaac and his father and uncle shared with Mr. LaCorte.

24.     On August 27, 2020, Mac Isaac made contact with Rudy Giuliani's lawyer, Robert Costello, regarding the data in his possession.  (Andrew Rice & Olivia Nuzzi, *The Sordid Saga of Hunter Biden's Laptop*, N.Y. MAG. (Sept. 12, 2022), https://nymag.com/intelligencer/article/hunter-biden-laptop-investigation.html (reporting that Mac Isaac sent an electronic message to the Giuliani Partners website on August 27, 2020, to which Mr. Costello replied that he and Mr. Giuliani were "in position to get the information to the right places, provided the information is accurate and was obtained lawfully.")).  That same day, Mr. Costello reached out to Mac Isaac via e-mail, touting his and Mr. Giuliani's ability "to get the information to the right places[.]" (Geoff Earle, *EXCLUSIVE: Rudy Giuliani lawyer's 2020 letter reveals effort to establish he got Hunter's laptop LAWFULLY*, DAILY MAIL (Feb. 3, 2023), https://www.dailymail.co.uk/news/article-11710301/Rudys-lawyer-told-man-got-Hunters-laptop-info-right-places.html).

25.     Later that day, Mr. Costello called Mac Isaac and they "agreed [Mac Isaac] would FedEx the drive to him [Mr. Costello] the next day."  (J.P. MAC ISAAC, AMERICAN INJUSTICE 63 (e-book)).  Mr. Costello told Mac Isaac that Counterclaim Defendant was an "honest guy" and a "good guy" for what he was doing, and Mac Isaac offered to buy Mr. Giuliani "his favorite bottle of scotch" after "this whole ordeal is over."  (*Id.* at 64).

26.     The following day, on August 28, 2020, Mac Isaac sent another copy of the data in his possession to the home of Mr. Costello in New York.  (Andrew Rice & Olivia Nuzzi, *The Sordid Saga of Hunter Biden's Laptop*, N.Y. MAG. (Sept. 12, 2022); Dan Friedman, *Exclusive: Leaked messages reveal the origins of the most vile Hunter Biden smear*, MOTHER JONES (Apr. 7, 2022),       https://www.motherjones.com/politics/2022/04/hunter-biden-laptop-guo-wengui-bannongiuliani/).  Knowing that the data would ultimately reach Mr. Giuliani, Mac Isaac admits: "I dropped the drive off at FedEx the next morning on my walk to work. It was done. The drive was on its way to the lawyer of the president." (J.P. MAC ISAAC, AMERICAN INJUSTICE 64 (e-book)).

27.     After receiving the drive the next day, Mr. Costello called Mac Isaac, who then provided Mr. Costello with "instructions on how to safely access it and avoid connecting it to the internet.  [Mr. Costello] was speechless for a few minutes as he verified the contents."  (*Id.*).

28.     Mr. Costello has admitted that he almost immediately booted up the hard drive sent to him by Mac Isaac and accessed the material, including sensitive financial information and personal photos, without permission to do so from the owner of that material, admitting that "[y]ou feel like a voyeur."  (Andrew Rice & Olivia Nuzzi, *The Sordid Saga of Hunter Biden's Laptop*, N.Y. MAG. (Sept. 12, 2022)).  Mr. Costello, who shared the data Mac Isaac had sent him with Mr. Giuliani and also with a reporter from the *New York Post* (Emma-Jo Morris), later told Mac Isaac in advance of a 2020 presidential debate, "'Rudy is briefing him [President Trump] on it right now

. . . Don't worry, you're still only known as 'Bob's guy.'" (J.P. MAC ISAAC, AMERICAN INJUSTICE 70 (e-book)).  It is likely that Mr. Costello still possesses this unauthorized copy.

29.     Beyond reviewing sensitive financial information and personal photos belonging to Mr. Biden, Mr. Costello even opened files to look at pictures of Beau Biden's final days.

30.     Their work together did not end there, though.  Mr. Costello later asked Mac Isaac and Mac Isaac "agreed" to help provide Mr. Costello with other information that could be used against President Biden's campaign or to assist then-President Trump.  (*Id.* at 65).  Mac Isaac admits, the following week, that he "assisted Bob [Costello] in making bootable copies of the drive so other people [Mr. Costello] was working with could have access." (*Id.*).  It is not yet known who the "other people" were and what unauthorized data was sent to them.  It is likely that these "other people" still possess this unauthorized data.

31.     Then, on September 24, 2020, Mac Isaac informed Senator Ron Johnson's staff that he had possession of data that he claimed came from a laptop left at his business by Mr. Biden. (*See* Letter from Sen. Ron Johnson, Chairman Comm. on Homeland Sec. & Governmental Aff., to DOJ Inspector General Michael E. Horowitz at 1 (Oct. 21, 2020), *available at* https://www.ronjohnson.senate.gov/services/files/7CD44E16-BF0B-495E-8B87-900467F69E50 ("On September 24, 2020, the day after Chairman Grassley and I released the majority staff report [about Hunter Biden and Burisma], . . . a whistleblower contacted the committee and informed staff that he had possession of a laptop left in his business by Hunter Biden.")).

32.     Armed with the data Mac Isaac provided to Mr. Costello, Mr. Giuliani then distributed a copy of the data to Steve Bannon, who on September 28, 2020, claimed to possess a copy of the data.  (Rachel Olding, *Steve Bannon Boasted on Dutch TV Weeks Ago That He Had Hunter Biden's Hard Drive*, DAILY BEAST (Oct. 15, 2020), https://www.thedailybeast.com/steve-

bannon-boasted-on-dutch-tv-weeks-ago-that-he-had-hunter-bidens-hard-drive).   It is likely that Mr. Giuliani and Mr. Bannon still possess these unauthorized copies.

33.     From there, Mr. Bannon appears to have given at least some of the data to Guo Wengui, a Chinese billionaire close to Mr. Bannon, because on October 24, 2020 and October 28, 2020, Mr. Wengui and his assistant (Yvette Wang) disseminated certain files to his followers on WhatsApp.  (Dan Friedman, *Exclusive: Leaked messages reveal the origins of the most vile Hunter Biden smear*, MOTHER JONES (Apr. 7, 2022)).  It is not yet known what data Mr. Bannon shared with Mr. Wengui or others, and it is likely that Mr. Wengui still possesses this unauthorized data.

34.     On October 14, 2020, the *New York Post* published an article about the data Mac Isaac had accessed and copied that he claimed belonged to Mr. Biden.  On a phone call a few days prior to publication, Mr. Costello told Mac Isaac that the *New York Post* had "agreed to keep [Mac Isaac's name] out of the story."  (J.P. MAC ISAAC, AMERICAN INJUSTICE 72 (e-book)).  Mac Isaac consented to this agreement.

35.     Mr. Giuliani, working with former New York police chief Bernard Kerik, also provided a copy of the data to Garrett Ziegler, a former Trump White House aide.  In May 2022, Mr. Ziegler uploaded the data he had in his possession, containing more than 120,000 emails, photos, and other files that he claimed belonged to Mr. Biden, to his website Marco Polo USA, where today anyone may access the data to support the claims they make against Mr. Biden and the Biden family.  (Josh Boswell, *EXCLUSIVE: Former Trump aide posts online a searchable database containing a huge trove of more than 120,000 emails from Hunter Biden's abandoned laptop, calling them 'a modern day Rosetta Stone of white and blue collar crime'*, DAILY MAIL (May 17, 2022), https://www.dailymail.co.uk/news/article-10825801/Former-Trump-aide-posts-

huge-trove-120-000-Hunter-Biden-emails-abandoned-laptop.html).   Mr. Ziegler maintains this website today.

36.     Lastly, Jack Maxey (an associate of Mr. Bannon's on Mr. Bannon's *War Room* podcast) created yet another copy of the data in December 2020 from a hard drive that Mr. Bannon possessed.  (Andrew Rice & Olivia Nuzzi, *The Sordid Saga of Hunter Biden's Laptop*, N.Y. MAG. (Sept. 12, 2022)).   Mr. Maxey then sent copies of the data to Republican members of Congress, and to the media (e.g., three copies to *The Washington Post* and one to the *Daily Mail*).   (*See* Samuel Chamberlain, *Hunter Biden laptop material entered into Congressional Record*, N.Y. POST (Mar. 29, 2022), https://nypost.com/2022/03/29/gaetz-tries-to-get-hunter-biden-laptop-into-congressional-record/; Matt Viser, *A look at the time Tucker Carlson asked Hunter Biden for a favor*, WASH. POST (May 19, 2022), https://www.washingtonpost.com/politics/2022/05/19/look-time-tucker-carlson-asked-hunter-biden-favor/).   Mr. Maxey also allegedly showed some or all of the data to *Fox News* anchor Tucker Carlson and gave a copy of the data to *New York Magazine*. (Alex Thompson & Max Tani, *The Holy War over Hunter Biden's laptop*, POLITICO (Jul. 13, 2022), https://www.politico.com/newsletters/west-wing-playbook/2022/07/13/the-holy-war-over-hunter-bidens-laptop-00045698; Andrew Rice & Olivia Nuzzi, *The Sordid Saga of Hunter Biden's Laptop*, N.Y. MAG. (Sept. 12, 2022)).   It is not yet known all of the people or entities to whom Mr. Maxey sent the unauthorized data, and it is likely that they and Mr. Maxey still possess this unauthorized data.

37.     Mac Isaac was in Delaware when he took the actions described in this counterclaim and then shared and caused to be transported this material across state lines and in interstate commerce, all without the owner's permission.

38.     Mr. Biden gave none of the individuals identified in this counterclaim permission to access, copy, disseminate, post or otherwise distribute any of his data, however they came into possession of it.

39.     Mr. Biden had more than a reasonable expectation of privacy that any data that he created or maintained, and especially that which was the most personal such as photographs, videos, interactions with other adults, and communications with his family, would *not* be accessed, copied, disseminated, or posted on the Internet for others to use against him or his family or for the public to view.

**Inconsistent Accounts by Mac Isaac**

40.     In failed attempts to justify his unlawful access of data that he alleges belonged to Mr. Biden, Mac Isaac has contradicted himself on his ability to identify who, if anyone, brought to the Mac Shop what he claims to be "Hunter Biden's Laptop" to his shop.

41.     For instance, in October 2020 (a month before the presidential election), Mac Isaac, who *Fox News* has reported is vision-impaired, initially claimed that he could not positively identify the customer who in April 2019 dropped off three devices at his repair shop.  (*See* Emma-Jo Morris et al., *Smoking-gun email reveals how Hunter Biden introduced Ukrainian businessman to VP dad*, N.Y. Post (Oct. 14, 2020), https://nypost.com/2020/10/14/email-reveals-how-hunter-biden-introduced-ukrainian-biz-man-to-dad/ ("The shop owner couldn't positively identify the customer as Hunter Biden, but said the laptop bore a sticker from the Beau Biden Foundation, named after Hunter's late brother and former Delaware attorney general.")).

42.     In fact, Mac Isaac stated that he "can't be sure" it was Mr. Biden who dropped off the computer for repairs.  (Jacqui Heinrich, *Hunter Biden email story: Computer repair store owner describes handing over laptop to FBI*, Fox News (Oct. 14, 2020),

https://www.foxnews.com/politics/hunter-biden-emails-computer-repair-store-owner-john-paul-mac-isaac).  Similarly, Mac Isaac stated in a television interview that he "never had a clear look at the person dropping off the laptop."  (Bo Erickson & Stefan Becket, *What we know—and don't know—about Hunter Biden's alleged laptop*, CBS NEWS (Oct. 16, 2020), https://www.cbsnews.com/news/hunter-biden-laptop-new-york-post-story/).

43.     However, a few months later in December 2020, after Mac Isaac was identified by the media and his story was questioned, he switched his story and now proclaimed that he was "100 percent sure" it was Mr. Biden who visited his shop in April 2019.  (J. Mac Isaac, *The Truth—It was Him*, YOUTUBE (Dec. 11, 2020), https://www.youtube.com/watch?v=THYjft9aH88).

44.     Mac Isaac has made other statements undermining his credibility.  For example, he told right-wing media outlet *Real America's Voice* that he was relieved when the FBI served him with a subpoena for a computer and the data in December 2019: "I thought everything was great when they took it [] because that was what I wanted the whole time was just to get this stuff out of my shop, have the FBI – have a paper trail that afforded me some protection, both physically and legally."  (Phillip Bump, *Now warning about Hunter Biden-laptop disinfo: The guy who leaked it*, WASH. POST (Apr. 12, 2022), https://www.washingtonpost.com/politics/2022/04/12/now-warning-about-hunter-biden-laptop-disinfo-guy-who-leaked-it/).[2]  But Mac Isaac retained at least one copy of the data for himself and, in August 2020, sent a copy of that data to Mr. Giuliani's lawyer, Mr. Costello.  (*Id.*).

---

[2] In a December 15, 2020 interview, Mac Isaac claimed, in reference to providing the data that he claimed was Mr. Biden's to the FBI in December 2019, "I just wanted it out of my shop," even though he had retained a copy of the data.  J.P. Mac Isaac, *The Truth – It was Him*, YOUTUBE (Dec. 11, 2020), https://www.youtube.com/watch?v=THYjft9aH88.

## COUNT ONE

## Invasion of Privacy by Intrusion

45.     Counterclaim Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 44 as if fully set forth herein.

46.     Counterclaim Defendant Mac Isaac has intruded upon the seclusion of Mr. Biden by accessing and wrongfully sharing Mr. Biden's personal data.

47.     As set forth above, no matter how they came into his initial possession, Mac Isaac improperly accessed files that he admits were "none of [his] business" even though he was never given permission by Mr. Biden to access or review any data of Mr. Biden's.

48.     Mac Isaac worked with Mr. Apelbaum and possibly others to create a forensic image of the data that was in his possession, even though he was never given permission by Mr. Biden to access or review any of his data and thus exposing what he claims to be Mr. Biden's data to another person.

49.     Mac Isaac made additional unauthorized copies of the data he came to possess and distributed them to his father, his uncle, and Mr. Costello, allowing them to access the data of Mr. Biden that Mac Isaac somehow possessed, including private information that Mac Isaac knew individuals would then distribute to others.  Mac Isaac did this even though he was never given permission by Mr. Biden to copy or review any of Mr. Biden's data.

50.     Mac Isaac's knowing and intentional distribution of Mr. Biden's personal and sensitive data was not carried out for any reasonable or legitimate purposes, but rather to try and expose Mr. Biden's data to those that he knew or should have known would intend to create embarrassment and harm for Mr. Biden.  In addition, Mac Isaac decided to use the data in his possession for commercial purposes and to make money, which he has done by including portions

of the data in his book and making reference to and/or making some or all of the data available at appearances he has made.

51. The unauthorized accessing and dissemination of Mr. Biden's data is offensive and objectionable to Mr. Biden, and would be highly offensive and objectionable to any reasonable person as they would not expect a computer repairman to copy and disseminate the private and confidential contents of someone's data.

52. Mac Isaac knew or should have known that the data he possessed and shared contained private and confidential information and content, including sensitive and private photographs and video of Mr. Biden, and that Mr. Biden had a reasonable expectation of privacy in this data, and that Mac Isaac's conduct would expose Mr. Biden's personal life in an egregious violation of Mr. Biden's right to privacy.

53. Mac Isaac has continued his invasion of Mr. Biden's right to privacy by publishing a book and making media appearances, which discuss or include data about Mr. Biden obtained by Mac Isaac.

54. Counterclaim Plaintiff's right to be free from invasion of privacy by intrusion has been denied under the common law of the State of Delaware.

55. Mac Isaac's actions as described in Count One violated Delaware common law and caused Mr. Biden to suffer considerable damages.

**COUNT TWO**

**Invasion of Privacy by Publication of Private Facts/Matters**

56. Counterclaim Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

57.     Counterclaim Defendant Mac Isaac disclosed and disseminated Mr. Biden's private and confidential data, which Mac Isaac came to possess, to various third parties and then wrote a book and made media appearances in which he described and discussed the data.

58.     By disseminating Mr. Biden's personal and sensitive information, which Mac Isaac came to possess, to others, Mac Isaac knew or should have known that this data would be made available to the public at large to embarrass and harm Mr. Biden.

59.     Mac Isaac knowingly and willfully shared with others the personal data of Mr. Biden that he came to possess (regardless of how he came to possess the data), despite it being reckless and unreasonable for any computer repairman to make copies of another's personal and sensitive information and to then send that data to third parties without the authority to do so.

60.     Due to the foregoing acts, Mac Isaac gave publicity to matters concerning the private life of Mr. Biden and private and sensitive depictions of him.

61.     The unauthorized and wrongful publication by Mac Isaac of what he came to possess about Mr. Biden's private and confidential data is highly offensive and would be offensive to any reasonable person of ordinary sensibilities and not of legitimate concern to the public.

62.     Mac Isaac violated Mr. Biden's right to privacy by publicizing his private data, including sensitive information, as a calculated move to financially capitalize on the publication.

63.     Mac Isaac continues to violate Mr. Biden's right to privacy by continuing to publicly discuss Mr. Biden's data even though it is of no recognized legitimate concern to the public other than that which Mac Isaac created himself for his own benefit.

64.     Counterclaim Plaintiff's right to be free from invasion of privacy by publication of private facts/matters has been denied under the common law of the State of Delaware.

65.     Mac Isaac's actions as described in Count Two violated Delaware common law and caused Mr. Biden to suffer considerable damages.

## COUNT THREE

### Conspiracy to Invade Privacy by Intrusion

66.     Counterclaim Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 65 as if fully set forth herein.

67.     Counterclaim Defendant Mac Isaac worked with and made an agreement with Mr. Apelbaum and possibly others to create a forensic image or copy of the data Mac Isaac came to possess without the owner's consent, thus exposing Mr. Biden's personal data to at least one other person in the process.  Mac Isaac then knowingly and improperly provided Mr. Biden's data that Mac Isaac came to possess to his father, his uncle, and Mr. Costello (knowing Mr. Costello was Mr. Giuliani's attorney, who was close to then-President Trump), who then shared that data with other third parties.

68.     Mac Isaac caused at least six other people to have access to Mr. Biden's personal and sensitive data that Mac Isaac came to possess without authorization, which would be highly offensive to a reasonable person.

69.     The object of invading Mr. Biden's privacy and disseminating his data was not for any legitimate purpose but to cause harm and embarrassment to Mr. Biden.  Mac Isaac knew that his father and Mr. Costello, based on agreement and discussions with them both, would attempt to further disseminate Mr. Biden's data to cause pain and embarrassment.

70.     Mac Isaac shared the data he obtained with various others, with whom he agreed that they would use and further disseminate the data to still other third parties.  Any agreement was without Mr. Biden's knowledge or permission.

71.     As a result of Mac Isaac's unlawful agreement and his conspiracy with others, Mr. Biden's personal data was made available to third parties and then ultimately to the public at large, which is highly offensive, causing harm to Mr. Biden and his reputation.

72.     Counterclaim Plaintiff's right to be free from civil conspiracy has been denied under the common law of the State of Delaware.

73.     Mac Isaac, in confederation and combination with others, agreed to and committed unlawful acts in furtherance of such conspiracy as described in Count Three in violation of Delaware common law and caused Mr. Biden to suffer considerable damages.

## COUNT FOUR

### Conspiracy to Invade Privacy by Publication of Private Facts/Matters

74.     Counterclaim Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 73 as if fully set forth herein.

75.     Counterclaim Defendant Mac Isaac disseminated copies of Mr. Biden's sensitive and personal data that Mac Isaac came to possess to his father, his uncle, and Mr. Costello, whom he knew or should have known was counsel for Mr. Giuliani, who frequently speaks negatively in public about Mr. Biden and his family.

76.     The purpose of providing Mr. Costello and others with a copy of Mr. Biden's personal and sensitive information was not for any legitimate purpose, but to cause harm and embarrassment to Mr. Biden by publishing his information. Mac Isaac and Mr. Costello agreed that Mac Isaac would provide Mr. Costello with the data for Mr. Costello to review and then to provide to Mr. Giuliani, so that the data would be in the "hands of the president's lawyer."

77.     Mac Isaac and his uncle agreed that his uncle would also try to further disseminate the contents of the data in their possession with the purpose of publicizing the data.

78.     Mr. Costello met with an employee of the *New York Post* after immediately reviewing the data that Mac Isaac sent him, to convince the *New York Post* to publicize what he said was Mr. Biden's private data.

79.     Mac Isaac's conspiracy to invade Mr. Biden's privacy by publicizing Mr. Biden's private information that Mac Isaac came to possess is highly offensive and would be to any reasonable person.

80.     Counterclaim Plaintiff's right to be free from civil conspiracy has been denied under the common law of the State of Delaware.

81.     Mac Isaac, in combination with others, worked and agreed to commit unlawful acts in furtherance of such conspiracy as described in Count Four in violation of Delaware common law and caused Mr. Biden to suffer considerable damages.

## COUNT FIVE

### Aiding and Abetting an Invasion of Privacy by Intrusion

82.     Counterclaim Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 81 as if fully set forth herein.

83.     Counterclaim Defendant Mac Isaac aided and abetted others in the invasion of Mr. Biden's privacy by intrusion upon the seclusion of Mr. Biden.

84.     Mac Isaac allowed Mr. Apelbaum access to the personal data of Mr. Biden that Mac Isaac came to possess and then with Mr. Apelbaum made a forensic copy of the data, and subsequently Mac Isaac provided copies of Mr. Biden's data to at least three other people, including his father, his uncle, and Mr. Costello (who in turn caused the data to be accessed by Mr. Giuliani, and others to whom Mr. Giuliani disseminated it).

85.     By disseminating Mr. Biden's private and sensitive data to others that he came to possess, Mac Isaac aided and abetted their violations of Mr. Biden's right to privacy.

86.     Mac Isaac knew that the people with whom he was sharing Mr. Biden's private and sensitive data would then also access and review the data, further invading Mr. Biden's privacy.

87.     Others were able to violate Mr. Biden's right to privacy only by accessing, reviewing, and publishing Mr. Biden's sensitive and personal data that Mac Isaac came to possess because Mac Isaac provided copies of Mr. Biden's data to third parties, including Mr. Costello, who caused Mr. Biden's data to be published.

88.     Counterclaim Plaintiff's right to be free from aiding and abetting has been denied under the common law of the State of Delaware.

89.     Mac Isaac's actions as described in Count Five violated Delaware common law and caused Mr. Biden to suffer considerable damages.

## COUNT SIX

**Aiding and Abetting an Invasion of Privacy by Publication of Private Facts/Matters**

90.     Counterclaim Plaintiff hereby incorporates the allegations set forth in paragraphs 1 through 89 as if fully set forth herein.

91.     Counterclaim Defendant Mac Isaac aided and abetted others in the invasion of Mr. Biden's privacy by publication of private facts or matters of Mr. Biden.

92.     Mac Isaac disseminated copies of Mr. Biden's personal and sensitive data that he came to possess to third parties, including Mr. Costello.

93.     Mr. Costello accessed the data he was sent, reviewed it, and then met with an employee of the *New York Post* to grant them access to review the data in an effort to convince the *New York Post* to publish a story including Mr. Biden's personal and sensitive data.

94.    Mr. Costello was only able to violate Mr. Biden's right to privacy by causing his private and sensitive data to be published because Mac Isaac provided Mr. Costello a copy of the data that Mac Isaac came to possess.

95.    Mac Isaac knew, or should have known, that Mr. Costello would attempt to publish the contents of the data as Mac Isaac repeatedly tried to get the data he possessed into the hands of others and made public.

96.    Counterclaim Plaintiff's right to be free from aiding and abetting has been denied under the common law of the State of Delaware.

97.    Mac Isaac's actions as described in Count Six violated Delaware common law and caused Mr. Biden to suffer considerable damages.

**<u>Demand for Jury Trial</u>:** Mr. Biden also seeks a trial by jury.

WHEREFORE Counterclaim Plaintiff Robert Hunter Biden prays this Court enter judgment as follows:

A.  Enter judgment in Counterclaim Plaintiff's favor against Counterclaim Defendant John Paul Mac Isaac on all Counts alleged in the Complaint and the Counterclaim;

B.  For compensatory damages to be proven at trial;

C.  For injunctive relief to require Counterclaim Defendant to return any copy and partial copy, whether written or electronic, of any data that he claims belongs to Counterclaim Plaintiff and to communicate with all those individuals to whom he provided copies (in whole or in part) to return said data to Counterclaim Plaintiff;

D.  For punitive damages for Counterclaim Defendant's willful, wanton, and reckless conduct in an amount to be determined at trial; and

E.  Plus attorney's fees incurred as a result of this action, interests and costs and any other

relief the Court deems just.

Dated: March 17, 2023                                Respectfully submitted,

                                                     /s/ Bartholomew J. Dalton

Abbe David Lowell, Esq.                              Bartholomew J. Dalton, Esq. (#808)
Sanaya M. Tamboli, Esq.                              **DALTON & ASSOCIATES, P.A.**
**WINSTON & STRAWN LLP**                             1106 West 10th Street
1901 L Street, NW                                    Wilmington, DE 19806
Washington, DC 20036                                 (302) 652-2050 (ph)
(202) 282-5000 (ph)                                  (302) 652-0687 (fax)
(202) 282-5100 (fax)                                 BDalton@dalton.law
ADLowell@winston.com
STamboli@winston.com

David A. Kolansky, Esq.
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
(212) 294-2636 (ph)
DKolansky@winston.com

*Counsel for Defendant/Counterclaim*
*Plaintiff Robert Hunter Biden*