**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN PAUL MAC ISAAC, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:23-cv-247 (MN) |
| | : | |
| v. | : | |
| | : | |
| CABLE NEWS NETWORK, *et. al.*, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S OPPOSITION TO UNITED STATES'
MOTION TO SUBSTITUTE AND TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION
PURSUANT TO RULE 12(b)(1)
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

Plaintiff, John Paul Mac Isaac ("Plaintiff"), hereby submits this Opposition to the United States' Motion to Substitute and to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1). In support of this Opposition, Plaintiff states as follows:

**BACKGROUND**

This action is brought by the Plaintiff as a result of defamatory statements by Defendants, including Defendant Adam Bennett Schiff ("Schiff"), about the Plaintiff and others alleged to be involved in the dissemination of information from the Hunter Biden laptop. Plaintiff owned a computer repair shop in Wilmington, Delaware and, in April 2019, Defendant Hunter Biden ("Hunter") dropped off a

2

laptop to be repaired. Biden returned to Plaintiff's shop once more to leave an external hard drive onto which Plaintiff was to transfer the recovered data from the laptop. Hunter never returned to pick up the laptop and the external hard drive. In December 2019, Plaintiff turned over the laptop and external hard drive to the Federal Bureau of Investigation ("FBI") concerned that the laptop and hard drive contained evidence of crimes. Plaintiff retained an exact copy of the hard drive out of fear that the information he provided to the FBI may be lost.

Eventually, during the impeachment hearings for President Donald J. Trump and believing the copy may contain information pertinent to the proceedings, Plaintiff contacted Mr. Rudolph Giuliani ("Giuliani") in an attempt to get the copy Plaintiff had retained to the President for his defense. However, on October 14, 2020, using the information provided to Giuliani by Plaintiff, the New York Post ("NY Post") published an article about some of the information on the hard drive ("NY Post Article"). As a direct response to the NY Post Article, the Defendants of this case, specifically including Schiff, began what seemed to be, an offensive against the Plaintiff, Giuliani, and others in an attempt to hinder the spread of the information from the laptop and discredit those identified as involved in its dissemination. Despite the fact that Plaintiff did not consent to the use of the information from the hard drive for anything other than as a legal defense nor did the Plaintiff consent to the publication of the NY Post Article, Schiff and the

Defendants defamed Plaintiff by creating a narrative that Plaintiff was knowingly involved in a Russian disinformation campaign. Despite admitting to not having received intelligence that the Hunter Biden laptop information was part of a Russian disinformation campaign, Schiff participated in an interview on Cable News Network ("CNN") and told the American public that the Hunter Biden laptop information is known to come from the Kremlin.

As a direct and proximate result of the actions of the Defendants, Plaintiff has suffered substantial damages directly attributable to the actions of the Defendants including: (1) the loss of his business and, as a result, loss of future revenue, (2) the loss of his ability to find gainful employment, and (3) substantial injury to his reputation and goodwill.

On October 17, 2021, the Plaintiff filed his complaint in Superior Court in the State of Delaware.  Plaintiff amended the Complaint to make minor corrections to the caption of the case on January 20, 2023.  On March 1, 2023, Plaintiff filed his Motion for Leave to File Second Amended Complaint and attached the Second Amended complaint thereto (all versions of the complaint are hereinafter referred to as the "Complaint").  On March 7, 2023 this action was removed to this Court.

## STATEMENT OF JURISDICTION

Plaintiff disputes whether this court has subject matter jurisdiction over this case. The primary sources of subject matter jurisdiction for the U.S. District Courts

are cases involving a federal question (28 U.S.C. § 1331) and diversity of citizenship (28 U.S.C. § 133). This case involves neither of those sources of subject matter jurisdiction.

Instead, the United States Department of Justice ("DOJ") attempts to convince this court that this matter falls under the Federal Tort Claims Act ("FTCA"). 28 USCS, Pt. VI, Ch. 171. Specifically, the DOJ is seeking dismissal of this claim pursuant to the Westfall Act, 28 U.S.C. § 2679, which was enacted in 1988 to codify the alleged common-law immunity created by the United States Supreme Court in Westfall v. Erwin, 484 U.S. 292 (1988). *See* FEDERAL EMPLOYEES LIABILITY REFORM AND TORT COMPENSATION ACT OF 1988, 1988 Enacted H.R. 4612, 100 Enacted H.R. 4612, 102 Stat. 4563.

As will be shown in this opposition, the DOJ made a mistake by certifying this matter and removing it to Federal Court. After this Court makes such a determination, this matter should be remanded back to State Court.

## APPLICABLE LAW

### A. Westfall Act

The FTCA creates a federal tort cause of action against the United States for injuries resulting from the negligent or wrongful acts or omissions of federal officials acting within the scope of their employment. The Westfall Act modified the FTCA by providing that, when a tort action is brought against a federal employee in his/her

individual capacity, DOJ may certify that the defendant employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. §2679(d)(1). If the DOJ certifies that the official was acting within the scope of employment, the suite "shall be deemed an action against the United States" under the FTCA, "and the United States shall be substituted as a party defendant." Id.

The DOJ's decision regarding scope-of-employment certification is considered "conclusive unless challenged. Accordingly, the party seeking review bears the burden of presenting evidence and disproving the [DOJ's] decision to [grant] scope of employment certification by a preponderance of the evidence." Saleh v. Bush, 848 F3d 880 (9th Cir. 2017) (quoting Green v. Hall, 8 F.3d 695, 698 (9th Cir. 1993)); *see also* Wilson v. Libby, 535 F. 3d 697, 711 (D.C. Cir. 2008); Lyons v. Brown, 158 F.3d 605, 610 (1st Cir. 1998); S.J. & W. Ranch, Inc. v. Lehtinen, 913 F.2d 1538, 1543 (11th Cir. 1990), *amended*, 924 F.2d 1555 (11th Cir. 1991).

***Scope-of-Employment Law***

In considering scope-of-employment issues under the Westfall Act, the Third Circuit applies the *respondeat superior* principles of the jurisdiction where the employment relationship exists. See Sharratt v. Murtha, 437 F. App'x 167 (3d Cir. 2011) (*citing* Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000)). Here, Schiff's

employment relationship with the United States exists in the District of Columbia even though, upon information and belief, the alleged tortious conduct occurred in the State of Maryland.

The District of Columbia follows § 228 of the Restatement (Second) of Agency, which provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the master; and
>
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228 (1958) ("Restatement"); *see* Wilson, 535 F.3d at 711; Council on Islamic Relations v. Ballenger, 444 F.3d 659, 663 (D.C. Cir. 2006).

The District of Columbia scope test is "an objective one, based on all the facts and circumstances." Wilson, 535 F.3d at 711 (quotation omitted). Because the test under § 228(1) is framed in the conjunctive, all four elements of § 228(1) must be

satisfied for a court to conclude that an employee acted within the scope of his office or employment.  See Ballenger, 444 F.3d at 663.

## ARGUMENT

The DOJ has approved certification of Plaintiff's case against Schiff under the Westfall Act.  Thus, Plaintiff has the burden, by a preponderance of the evidence, to show that Schiff was not acting within the scope of his office or employment as a Member of the U.S. House of Representatives at the time of the incident out of which the Complaint arose.

First, the Complaint clearly alleges that Schiff's conduct was undertaken as part of a campaign-type communication and campaign activity is not "of the kind [Schiff] is employed to perform," or "within the authorized time and space limits" for a Member of Congress. Restatement §§ 228(1)(a), (b). Second, the Complaint alleges that Schiff engaged in a conspiracy to lie to the American public to ensure the election of the Democratic Presidential candidate, Joseph R. Biden, Jr. ("Biden") and to defame those who had any connection to Hunter's laptop, including the Plaintiff. Finally, the Complaint provides sufficient proof that Schiff knew that his statements were false. That alleged conduct plainly would not qualify as within the scope of employment for an officer or employee of the United States because lying to ensure the election of a preferred candidate is different in kind from

8

any authorized conduct and not "actuated…by a purpose to serve" the employer. *Id.* § 228(1)(c).

As such, this Court should overturn the DOJ's certification to substitute the United States as Defendant and order that Schiff was not acting within the scope of his employment and should proceed in his individual capacity. Plaintiff's Complaint shows, by a preponderance of the evidence, that it is more likely that Schiff acted to ensure the election of Biden than out of concern that a foreign power was seeking to influence the 2020 U.S. Presidential election.

Alternatively, this Court should grant limited discovery for the purposes of determining whether Schiff's purpose was to warn the American people of what he truly believed was a foreign threat to our elections or if Schiff's purpose was to ensure the election of Biden.

**I. Schiff's Interview with CNN was not within the scope of the office or employment of a Member of Congress.**

*Official Duties*

Article I, Section 6 of the United States Constitution provides that a member of Congress shall be free from liability for things said while participating in a Congressional debate or proceeding (Speech and Debate Clause). Schiff was not participating in a Congressional debate or proceeding.

Schiff's defamatory statements were not made pursuant to the enumerated powers of Congress set forth in Article I, Section 8 of the U.S. Constitution. Nor

9

were Schiff's defamatory statements made pursuant to the "implied powers" of Congress. Reinstein, Robert J. (2019) "The Aggregate and Implied Powers of the United States," American University Law Review: Vol. 69 : Iss. 1 , Article 3

### *Electioneering and Campaign Efforts*

Members of Congress are subject to extensive restrictions that carefully distinguish between official functions and unofficial activity, including electioneering and campaign efforts. It is undisputed that Schiff participated in the CNN interview. Compl. ¶ 6. Additionally, the Complaint clearly alleges that it is more likely than not that Schiff knew that his statements during the Interview were lies. Compl. ¶¶ 68-76. During the interview itself, Schiff admitted that the intelligence community "has not been very forthcoming in terms of the intelligence on the Russian threat." *Id.* Finally, during the interview, Schiff states that "there's only one remedy at this point and that's to vote [Trump] out." *See* Exhibit I of the Complaint.

Further, the Complaint clearly alleges that it is more likely than not that the information on the Hunter Biden laptop was of the type that would hurt the candidacy of Biden and that Schiff had a record of campaigning for Biden.

As such, Schiff's statements about the Plaintiff constituted electioneering and campaign efforts because he, admittedly, made the statements despite being told the opposite by the intelligence community.

## II. Deceiving the American public would not be within the scope of a Member of Congress's employment.

The House Ethics Manual sets the general ethical standards for members of Congress. House Ethics Manual (2022), Chapter 1, "General Ethical Standards," at 1 – 21.[1] These rules can and should be interpreted as the rules of the master in the DOJ's determination of a member's "scope of employment." Therefore, at a minimum, the DOJ should view these general standards as a baseline for the determination of whether the servant member's behavior was actuated by a purpose to serve the master, whose "rules" are set forth in the House Ethics Manual. *See* Restatement § 228(2).

Clause 1 of the general ethical standards by which a Member of the House should act states that Members should "conduct themselves at all times in a manner that reflects creditably on the House." *See* Id at 1. Cases involving this clause historically view violations of the clause as "encompassing violations of law and abuses of one's official position." Id.

Clause 3 of the general ethical standards by which a Member of the House should act states that Members should "adhere to the broad ethical standards expressed in the Code of Ethics for Government Service." Id. The Code of Ethics for Government Service states that any person in government service should "adhere

---

[1] https://ethics.house.gov/sites/ethics.house.gov/files/documents/2022/House-Ethics-Manual-2022-Print.pdf

11

to the highest moral principles." House Ethics Manual (2022), Appendix, "Code of Ethics for Government Service," at 355.

By certifying this case, the DOJ argues that Schiff did not abuse his official position by making deceptive statements about the Hunter Biden laptop on a news program. Further, the DOJ argues that knowingly deceiving the American public adheres to the highest moral principles of a person in government service. Not only did Schiff knowingly deceive the public – he did so knowing the harm it would cause the Plaintiff.

The DOJ wrongly determined that deceiving the American public, as Schiff knowingly did when he appeared on CNN, was "in the scope of his employment," since the statements made during the interview were obvious violations of the House ethical rules.

The Westfall Act should not be read to allow Schiff, or any other Member of Congress, to relieve himself from liability for knowingly defaming a member of the public as a means to steer votes to his chosen candidate. The U.S. Constitution created the Judicial Branch to prevent this exact type of government overreach. To allow the DOJ to certify this matter pursuant to the Westfall Act will continue the long path down the slippery slope that Americans are witnessing.

## CONCLUSION

The Plaintiff respectfully request that this Honorable Court overturn the decision of the United States Department of Justice to certify this case against Adam Bennett Schiff and have Adam Bennett Schiff proceed in his individual capacity. Alternatively, the Plaintiff respectfully requests that this Honorable Court allow limited discovery to determine whether Schiff's purpose was to warn the American people of what he truly believed was a foreign threat to our elections or if Schiff's purpose was to ensure the election of Biden.

Dated:       March 24, 2023

/s/ Ronald G. Poliquin
**Ronald G. Poliquin, Esquire**
I.D. No. 4447
1475 S. Governors Ave.
Dover, DE 19904
Ph: (302) 702-5501
 ron@poliquinfirm.com

/s/ Brian R. Della Rocca
Brian R. Della Rocca
Compass Law Partners
51 Monroe Street, Suite 408
Rockville, Maryland 20850
Telephone No.: (240) 560-3030
 Email:    bdellarocca@compass-law.com

*Admitted pro hac vice*