IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN PAUL MAC ISAAC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 23-247 (MN) |
| | ) |
| CABLE NEWS NETWORK, INC., ADAM BENNETT SCHIFF, POLITICO LLC, ROBERT HUNTER BIDEN, AND BFPCC, INC., | ) ) ) ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Ronald G. Poliquin, THE POLIQUIN FIRM LLC, Dover, DE; Brian R. Della Rocca, COMPASS LAW PARTNERS, Rockville, MD – Attorneys for Plaintiff

David J. Soldo, MORRIS JAMES LLP, Wilmington, DE; Alison Schary, DAVIS WRIGHT TREMAINE LLP, Washington, DC; Hilary Oran, Katherine M. Bolger, DAVIS WRIGHT TREMAINE LLP, New York, NY – Attorneys for Cable News Network, Inc.

Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, James G. Touhey, Jr., Director, Torts Branch, Stephen R. Terrell, Attorney, Torts Branch, UNITED STATES DEPARTMENT OF JUSTICE, Washington, DC – Attorneys for the United States

David J. Margules, BALLARD SPAHR LLP, Wilmington, DE, Lauren Russell, BALLARD SPAHR LLP, Washington, DC, Kaitlin M. Gurney, BALLARD SPAHR LLP, Philadelphia, PA – Attorneys for Politico LLC

Bartholomew J. Dalton, DALTON & ASSOCIATES, P.A., Wilmington, DE; Abbe David Lowell, Sanaya M. Tamboli, WINSTON & STRAWN LLP, Washington, DC; David A. Kolansky, WINSTON & STRAWN LLP, New York, NY – Attorneys for Robert Hunter Biden

October 17, 2023
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**:

Presently before the Court is Plaintiff's Motion for Relief from a Judgment or Order Pursuant to Rule 60(b), asking the Court to reconsider its decision substituting the United States for Defendant Adam Bennett Schiff, dismissing the case against the United States, and remanding the remainder of the case to the Delaware Superior Court. (D.I. 18). The motion has been fully briefed. (D.I. 20, 21). For the reasons set forth below, the Court DENIES the motion.

## I.     BACKGROUND

On October 17, 2022, Plaintiff John Paul Mac Isaac ("Plaintiff") brought this defamation action against Cable News Network, Inc. ("CNN"), Adam Bennett Schiff ("Schiff"), Politico LLC ("Politico"), and Robert Hunter Biden ("Biden") in the Superior Court of the State of Delaware, County of Sussex. (D.I. 1-3). On January 20, 2023, he filed a First Amended Complaint ("Amended Complaint") adding defendant BFPCC, Inc. (D.I. 1-1). According to the Amended Complaint, the claims against Schiff are based on statements he made during a CNN interview he participated in as a Member of Congress. (D.I. 1-1, Count I). On March 7, 2023, the United States removed this action from the Superior Court of the State of Delaware pursuant to 28 U.S.C. § 2679(d)(2). (D.I. 1). Thereafter, the United States moved to substitute itself as defendant for Schiff under the Federal Tort Claims Act ("FTCA") and then to dismiss for lack of subject matter jurisdiction.

Plaintiff did not respond to the United States' motion in the time allotted under the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware. *See* D. Del. LR 7.1.2(b). On March 24, 2023, the Court granted the United States' motion and remanded the remainder of the case to the Delaware Superior Court. (D.I 15, 16). The

Court's opinion noted that the motion had not been opposed (D.I. 15 at 1), but then proceeded to address the arguments on the merits (*id.* at 3-5).

Later that day, Plaintiff filed the instant motion arguing that "the opposition to the motion was inadvertently not filed within the required 14 days as provided by Local Rule 7.1.2" because his counsel had been under the misapprehension that the response was not due because of "F.R.C.P. Rule 7(d) which allows 35 days for dispositive motions."[1] (D.I. 18 at 3). There is, however, no Rule 7(d) in the Federal Rules of Civil Procedure. Attached to Plaintiff's motion for relief was his proposed late answering brief in response to the United States' motion. (D.I. 18-1). For the sake of efficiency, the Court allowed the United States to file a reply brief in support of its motion. (D.I. 23, 24).

## II. LEGAL STANDARDS

### A. Rule 60(b)

A motion for reconsideration filed pursuant to Federal Rule of Civil Procedure 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances[.]" *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). "The general purpose of Rule 60 . . . is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978). Rule 60(b) motions are "addressed to the sound discretion of the trial court guided by accepted legal principles applied in light of all the relevant circumstances." *Ross v. Meagan*, 638 F.2d 646, 648 (3d Cir. 1981) (citation omitted). The Third Circuit has cautioned, however, that relief from a judgment under Rule 60 should be granted only

---

[1] Later, in his reply, Plaintiff stated that his counsel "incorrectly believe[ed] the deadline to be 30 days" after the United States filed its motion to substitute and dismiss. (D.I. 21 at 3).

2

in exceptional cases. *Boughner*, 572 F.2d at 977; *see also Harris v. Martin*, 834 F.2d 361, 364 (3d Cir. 1987) ("[R]elief under Rule 60(b) is available only under such circumstances that the 'overriding interest in the finality and repose of judgments may properly be overcome.'" (quoting *Martinez-McBean v. Gov't of the Virgin Islands*, 562 F.2d 908, 913 (3d Cir. 1977))).

Here, Plaintiff filed his motion under Rule 60(b)(1), asserting "mistake, inadvertence, surprise, or excusable neglect." (D.I. 18 at 3); Fed. R. Civ. P. 60(b)(1). When assessing Rule 60(b)(1) motions, "whether a party's neglect is '"excusable" is essentially an equitable [question], in which courts are to take into account all relevant circumstances surrounding a party's failure to file.'" *George Harms Constr. Co. v. Chao*, 371 F.3d 156, 163 (3d Cir. 2004) (quoting *Chemetron Corp. v. Jones*, 72 F.3d 341, 349 (3d Cir. 1995)). The Court balances the four so-called *Pioneer* factors: "(1) the danger of prejudice [to the opposing party]; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for the delay (including whether it was within the reasonable control of the movant); and (4) whether the movant acted in good faith." *Hart v. Oppman*, 765 F. App'x 644, 647 (3d Cir. 2019) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); *see also In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 125 n.7 (3d Cir. 1999) (stating that the *Pioneer* analysis of excusable neglect applies in the context of deciding a Rule 60(b) motion). The Supreme Court has noted however, that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *See Pioneer*, 507 U.S. at 392.

### B. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, and thus may adjudicate cases and controversies only as permitted under Article III of the Constitution. U.S. Const. art. III, § 2. If a court determines that it lacks subject matter jurisdiction, it must dismiss the complaint. *E.g.*,

Fed. R. Civ. P. 12(h)(3). A defendant may move to dismiss on this basis pursuant to Federal Rule of Civil Procedure 12(b)(1), challenging the jurisdiction of the court to address the merits of a plaintiff's complaint.

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction can attack the complaint on its face (facial attack), or it can attack the existence of subject matter jurisdiction in fact (factual attack). *Mortensen v. First Fed. Sav. and Loan*, 549 F.2d 884, 891 (3d Cir. 1977). Here, the United States raised a facial challenge. (D.I. 4 at 6). In reviewing a facial attack to subject matter jurisdiction, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

Sovereign immunity operates as a jurisdictional bar to suit. "The United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted); *see also Richards v. United States*, 176 F.3d 652, 654 (3d Cir. 1999) ("Sovereign immunity not only protects the United States from liability, it deprives a court of subject matter jurisdiction over claims against the United States."). Thus, to sue the sovereign, a plaintiff's allegations must invoke a valid waiver of sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA operates as one such waiver, but its "established procedures have been strictly construed." *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010) (quoting *Livera v. First Nat'l State Bank of N.J.*, 879 F.2d 1186, 1194 (3d Cir. 1989)).

### C. Federal Tort Claims Act

The FTCA is the exclusive remedy for "personal injury . . . arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b). As amended by the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("the Westfall Act"), the FTCA provides a mechanism for the United States to substitute itself as defendant for employees sued individually. "[T]he purpose of the Westfall Act is to assure that the decisions and conduct of federal public servants in the course of their work will not be adversely affected by fear of personal liability for money damages and of the burden of defending damage liability claims." *Melo v. Hafer*, 13 F.3d 736, 744 (3d Cir. 1994). Specifically, upon certification by the Attorney General that a federal employee was acting within the scope of his office or employment at the time of the incident out of which a state law claim arises, any civil action arising out of the incident shall be deemed an action brought against the United States, and the United States shall be substituted as sole defendant with respect to those claims. 28 U.S.C. § 2679(d)(1).

That certification "is *prima facie* evidence that the employee's challenged conduct occurred within the scope of employment, but it is not conclusive. Thus, a plaintiff challenging the certification has the burden of coming forward with specific facts rebutting it." *Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir. 1992). The challenge, however, does not require a hearing. "If the facts can be determined without an evidentiary hearing, the court can rule on a . . . motion to substitute . . . based on the certification, pleadings, documentary evidence, and affidavits." *Id.*; *see also Brumfield v. Sanders*, 232 F.3d 376, 379-80 (3d Cir. 2000) (resolving scope of employment issue as a matter of law without discovery where Attorney General's certification was based on facts as alleged in the complaint).

The FTCA requires a plaintiff to present an administrative claim to the relevant federal agency and receive a denial from the agency in writing before filing a tort claim against the United States. *See* 28 U.S.C. § 2675(a). Sovereign immunity is not waived, and subject matter jurisdiction is therefore lacking, if a plaintiff fails to comply with the FTCA's mandatory administrative claim procedure before filing suit. *See, e.g.*, *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003).

### III. DISCUSSION

#### A. Plaintiff's Request for Relief from the Judgment Under Rule 60(b)

Plaintiff asserts that his answering brief was inadvertently not timely filed and seeks relief under Rule 60(b)(1) of the Federal Rules of Civil Procedure. According to Plaintiff, the brief was not timely filed because counsel "was preparing the opposition for March 24, 2023 and mistakenly was timing its response based on F.R.C.P. Rule 7(d) which allows 35 days for dispositive motions." (D.I. 18 at 3). In his reply brief in support of his motion, Plaintiff acknowledges that his "counsel admittedly missed the response deadline pursuant to [D. Del. LR] 7.1.2(b), incorrectly believing the deadline to be 30 days" after the United States filed its motion to substitute and dismiss. (D.I. 21 at 3). In fact, Plaintiff's response was due 14 days after the United States filed its motion to substitute and dismiss. *See* D. Del. LR 7.1.2(b). As previously noted, there is no Rule 7(d) of the Federal Rules of Civil Procedure. Moreover, there is no federal or local rule of this Court that provides either 30 or 35 days for a response to a dispositive motion.[2]

---

[2] It appears Plaintiff's counsel may have mistakenly consulted the Rules of the United States Court of International Trade, which do include a Rule 7(d), but those rules have no effect in this Court.

6

The parties agree that the *Pioneer* factors control but disagree as to the overall balance of the factors.³ (*See* D.I. 18 at 4, D.I. 20 at 3-5, D.I. 21 at 3-7).  The Court agrees with the United States that the first, third, and fourth factors weigh against granting Plaintiff's motion.

First, as to the danger of prejudice to the government or Schiff, the Court finds that this factor weighs against granting the motion.  Pursuant to the Westfall Act, once the Attorney General has certified that the defendant federal officer was acting within the scope of his employment at the relevant time, that federal officer "is dismissed from the action, and the United States is substituted as defendant" in his place.  *Osborn v. Haley*, 549 U.S. 225, 230 (2007).  This substitution and dismissal "spares" the federal officer from "the burden of defending a suit."  *Id.* at 238-39.

Although Plaintiff acknowledges that certification under the Westfall Act is *prima facie* evidence that the employee's challenged conduct occurred within the scope of employment, he argues that this Court should allow the parties to "argue the merits of their differing stances regarding certification."⁴ (D.I. 21 at 4).  The burden is on Plaintiff, however, to provide facts to rebut the certification.  *Schrob*, 967 F.2d at 936.  This Court previously considered whether the allegations included in Plaintiff's Amended Complaint were sufficient to overcome the certification and found that they were not.  (D.I. 15 at 3-4).  Plaintiff has provided no new factual

---

3   The Third Circuit imposes a "duty of explanation" on district courts examining a Rule 60(b)(1) excusable neglect motion.  *In re Cendant Corp. PRIDES Litig.*, 235 F.3d 176, 182 (3d Cir. 2000).  As such, this Court will "review the *Pioneer* factors and memorialize [its] analysis."  *Payne El-Bey v. Amazon, LLC*, No. 21-1866, 2022 WL 17958639, at *2 (3d Cir. Dec. 27, 2022).

4   Plaintiff suggests that without such opportunity, "the Court of public opinion will likely rule harshly against Congressman Schiff, who admitted to communicating false information to the public."  (D.I. 21 at 4).  Coming from the proponent of the motion for reconsideration (and opponent of the Westfall Act certification), this is not a compelling argument.

7

allegations in support of his motion for reconsideration and thus, having previously fully considered Plaintiff's allegations and arguments, the Court finds that it is not necessary, nor in the interest of judicial economy, to permit the parties to continue to argue this point. Further, the Court agrees with the United States that such reconsideration would be prejudicial to Schiff and the government because it would needlessly result in continued litigation and legal uncertainty.

Second, regarding the length of the delay, the parties do not dispute, and the Court agrees, that because the delay was only a few days this factor weighs in favor of granting the motion.[5]

Third, as to the reason for the delay, including whether it was within the reasonable control of the movant, here the Plaintiff, the parties do not dispute that this factor weighs against granting the motion. (D.I. 20 at 4-5, D.I. 21 at 6). The Court agrees. The sole reason for the delay was Plaintiff's counsel's error regarding the deadline for submitting a response to the United States' dispositive motion. Thus, and relatedly, this error was entirely within the reasonable control of the movant.

Lastly, the fourth factor, whether the movant acted in good faith, tips slightly in favor of the United States. Although there is no indication that Plaintiff or his counsel acted in bad faith, at least in the specific sense of engaging in outright misconduct or inequitable behavior, the Court cannot overlook the apparent lack of diligence on the part of Plaintiff's counsel, specifically in erring as to the response deadline. Here, even though Plaintiff filed the instant motion on the same day as the Court's opinion, the Court cannot conclude that Plaintiff was "'so careful or vigilant as to overcome the weight' of the 'reason for the delay' factor." *See Ragguette v. Premier Wines &*

---

[5] Plaintiff's argument that his counsel planned to file his opposition on the day the Court issued its order and "well in advance of what Plaintiff's counsel mistakenly believed to be a 30-day response deadline" is irrelevant. (*See* D.I. 21 at 5).

*Spirits*, 691 F.3d 315, 333 (3d Cir. 2012) (quoting *In re Am. Classic Voyages Co.*, 405 F.3d 127, 134 (3d Cir. 2005)).

Having considered the four *Pioneer* factors, the Court finds that the equities weigh in favor of denying Plaintiff's motion.

B. **The United States' Request for Substitution and Motion to Dismiss**

Having determined that Plaintiff has not established that he is entitled to relief, there is no reason to go further. The Court, however, will do so to ensure the case is not delayed or otherwise hindered from proceeding in the appropriate forum.[6]

1. **Westfall Act Certification**

It is undisputed that the Westfall Act empowers the Attorney General to certify that a federal employee sued for wrongful or negligent conduct "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Osborn*, 549 U.S. at 229-30 (quoting 28 U.S.C. § 2679(d)(2)). Once the Attorney General makes such certification, the Westfall Act provides that the United States "shall" be substituted as the sole defendant in the action. 28 U.S.C. § 2679(d)(2). Because the "certification is *prima facie* evidence that the employee's challenged conduct occurred within the scope of employment, . . . a plaintiff challenging the certification has the burden of coming forward with specific facts rebutting it." *Schrob*, 967 F.2d at 936.

---

[6] It appears the case has been proceeding against the remaining defendants in Delaware Superior Court. Following this Court's Order (D.I. 15) and Plaintiff's filing of the instant motion, Plaintiff sought a stay of the state court proceedings, which was opposed by Defendants Politico and Biden. The court allowed discovery to proceed between Plaintiff and Biden and stayed discovery as to CNN and Politico, both of which had filed motions to dismiss. Later, at the request of CNN, Politico and Biden, the court held a status conference and ordered that the case move forward. *See* Del. Super. Ct. Docket, No. S22C-10-012; *see also* June 1, 2023 Order, July 24, 2023 Order.

9

Here, James G. Touhey, Jr., the Director of the Torts Branch of the Civil Division of the United States Department of Justice, acting pursuant to 28 C.F.R. § 15.4(a), issued a Westfall Act certification that Schiff was acting within the scope of his employment as a Member of Congress at the time of the incidents out of which Plaintiff's defamation claims arose. (D.I. 1-2). That certification is *prima facie* evidence that Schiff's challenged conduct occurred within the scope of employment, meaning that the burden thus shifts to Plaintiff to come forward with "specific facts rebutting it." *Schrob*, 967 F.2d at 936.

The Court previously addressed the allegations Plaintiff made in his Amended Complaint. (D.I. 15 at 4) (citing examples and recognizing Plaintiff's allegations as "conclusory (and somewhat contradictory)"). In his opposition, Plaintiff asserts no additional facts to rebut the Westfall Act certification but rather recites again what "the Complaint alleges." (D.I. 18-1 at 8). As discussed, the Court has already determined that relying on the allegations of the Amended Complaint is insufficient to overcome Plaintiff's burden.

Plaintiff argues that Schiff's CNN interview was outside of the scope of his employment because it was not conducted pursuant to an enumerated or implied power of Congress and included "deceptive statements." (D.I. 18-1 at 9-12). Rather, according to Plaintiff, Schiff's interview was part of an electioneering or campaign effort. (*Id.* at 10-12). Plaintiff cites two portions of the Constitution, the Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1, and Article I, section 8, as the seemingly full extent of the "official duties" of Members of Congress and argues that Schiff's conduct is not encompassed by either or otherwise included in Congress' implied powers. (*See* D.I. 18-1 at 9-10). Plaintiff, however, provides no support for this limited interpretation of the duties of a Member of Congress. In fact, in the Speech or Debate Clause context, the Supreme Court has explained that "[i]t is well known, of course, that Members of the

10

Congress engage in many activities other than the purely legislative activities . . . [including] a wide range of legitimate 'errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases and speeches delivered outside the Congress." *United States v. Brewster*, 408 U.S. 501, 512 (1972).

In support of his assertion that Schiff's interview was part of an electioneering or campaign effort, Plaintiff again refers to the conclusory allegations of his Amended Complaint. (D.I. 18-1 at 10) (alleging that "it is more likely than not that Schiff knew that his statements during the Interview were lies" and "it is more likely than not that the information on the Hunter Biden laptop was of the type that would hurt the candidacy of Biden and that Schiff had a record of campaigning for Biden"). Plaintiff specifically identifies two statements Schiff made during the interview, one concerning the lack of information coming from the intelligence community and the second indicating that the only "remedy" was to vote President Trump out of office. (D.I. 18-1 at 10 (citing D.I. 1-1 (Am. Compl. Ex. I)). "[T]he Westfall Act certification must be respected unless and until the District Court determines that [the federal employee], in fact, engaged in conduct beyond the scope of his employment." *Osborn*, 549 U.S. at 251 (original italics omitted). These comments alone, and because Plaintiff provides little else, are insufficient to overcome the Attorney General's certification.

Other federal courts have similarly concluded that elected representatives, including Members of Congress, act within the scope of employment when communicating their views on matters of public interest to their constituents, even when those views veer into the political or include allegedly defamatory statements. *See, e.g.*, *Wuterach v. Murtha*, 562 F.3d 375, 384 (D.C. Cir. 2009) (where "underlying conduct" of giving an interview was "unquestionably of the

11

kind that [the defendant] was employed to perform as a Member of Congress," the entire statement was within the scope); *Council on Am. Islamic Rels., Inc. v. Ballenger*, 444 F.3d 659, 662, 664-65 (D.C. Cir. 2006) (determining that where a Member of Congress made allegedly defamatory comments during a telephone interview, "[t]he appropriate question . . . is whether that telephone conversation – not the allegedly defamatory sentence – was the kind of conduct [the defendant] was employed to perform" and finding that it was); *Williams v. United States*, 71 F.3d 502, 506-07 (5th Cir. 1995) (concluding "as a matter of law" that statements made during a television interview, "including the alleged defamatory remarks and even assuming such remarks are defamatory," was an action that "clearly fell within the course and scope of [the defendant's] position as a Member of Congress"); *Does 1-10 v. Haaland*, 973 F.3d 591 (6th Cir. 2020) (recognizing that Members of Congress "broadcast their views on pending legislation and related current events through press releases, televised speeches, interviews, and . . . through social media postings" and finding that defendants had acted within the scope of their employment in so doing); *Chapman v. Rahall*, 399 F. Supp. 2d 711, 714-15 (W.D. Va. 2005) (finding that Member of Congress acted within the scope of his employment when he allegedly called the plaintiff "a bigoted, right wing, redneck racist wacko" in remarks he made to a television reporter); *Operation Rescue Nat'l v. United States*, 975 F. Supp. 92, 107-08 (D. Mass. 1997) (holding that comments made by a senator to the press following a campaign event were within the scope of his responsibilities).

Thus, Plaintiff has failed to meet his burden of coming forward with specific facts to rebut the Attorney General's Westfall Act certification.

### 2. Scope of Employment Law

Because Plaintiff discusses scope of employment law in his opposition (D.I. 18-1 at 6-8), the Court addresses it here to clarify which jurisdiction's law would apply. The parties appear to disagree about whether the District of Columbia or Maryland law applies to the scope of employment analysis. The Court agrees with the United States that Maryland law applies. Under the FTCA, whether an employee acted within the scope of his employment is determined by looking "to the law of the state in which the action took place." *Vanderklok v. United States*, 868 F.3d 189, 203 (3d Cir. 2011); *see also* 28 U.S.C. 1346(b)(1) (waiving sovereign immunity "where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred*" (emphasis added)). Here, the Court understands that Schiff made the allegedly defamatory statements during the CNN interview from his residence in Maryland and thus looks to Maryland law.[7]

Despite alleging that the defamatory conduct occurred in Maryland, Plaintiff suggests that it is the law of the "jurisdiction where the employment relationship exists" that applies to the scope of employment analysis. (D.I. 18-1 at 6-7). Plaintiff goes on to state that for Schiff, that place is the District of Columbia, which is presumably based on his position as a Member of Congress (although Plaintiff does not explain further). The case Plaintiff cites for this proposition, however, *Sharratt v. Murtha*, says nothing about the place of the employment relationship, only that "a court must consult the relevant state law of respondeat superior." 437 F. App'x 167, 171 (3d Cir. 2011).

---

[7] Both Plaintiff and the United States note that the allegedly tortious statements were made in Maryland. (D.I. 18-1 at 6) (Plaintiff stating that "the alleged tortious conduct occurred in the State of Maryland"); (D.I. 4 at 7 n.1) ("[T]he United States understands the complaint to allege Representative Schiff made the allegedly defamatory statements from his residence in Maryland during the CNN interview."). Schiff represents the 30th Congressional District of California but neither party suggests that California scope of employment law should be considered in the Court's analysis.

Moreover, the defendant in that case was also a Member of Congress (Murtha represented Pennsylvania's 12th Congressional District at the time) and the Court applied the law of Pennsylvania, not the District of Columbia, in conducting its scope of employment analysis.[8]

Ultimately it is of little difference, because as relevant here, the two jurisdiction's laws are substantively the same.  *Doe v. Meron*, 929 F.3d 153, 164 (4th Cir. 2019) (comparing the scope of employment laws of the District of Columbia and Maryland and noting that they "are materially the same").  The Court sees no reason to upset the Attorney General's certification.

## IV    CONCLUSION

For the foregoing reasons, Plaintiff's motion is denied.  An appropriate order will issue.

---

[8]    In *Murtha*, neither the complaint nor the court specify where the allegedly tortious conduct occurred, only that defendant's statements were broadcast throughout Pennsylvania and nationally.

14